# FISHMAN et al. v. SCHAFFER, SECRETARY OF STATE OF CONNECTICUT, et al.

No. A–257.   Decided October 1, 1976

Mr. Justice Marshall, Circuit Justice.

This is an application to me as Circuit Justice for an injunction ordering officials of the State of Connecticut to place on the ballot for the November 2 election the names of the Communist Party candidates for President and Vice President of the United States, Gus Hall and Jarvis Tyner, respectively.   Applicants[1] sought relief without success from a three-judge District Court for the District of Connecticut and, on appeal, from the Court of Appeals for the Second Circuit.[2]   While there is no question of my power to grant

---

[1] Applicants are two petition circulators (Fishman and Gagyi) and the Presidential and Vice Presidential candidates of the Communist Party (Hall and Tyner), for whose candidacy Fishman and Gagyi circulated petitions.

[2] In view of the District Court's denial of relief on equitable grounds without deciding the merits of the constitutional attack, applicants properly sought review initially in the Court of Appeals.  See *McCarthy* v. *Briscoe, ante,* at 1317–1318, n. 2; *MTM, Inc.* v. *Baxley,* 420 U. S. 799, 804 (1975).

such relief, this Court's Rule 51; *McCarthy* v. *Briscoe, ante,* p. 1317 (POWELL, J., in chambers); *Williams* v. *Rhodes,* 89 S. Ct. 1, 21 L. Ed. 2d 69 (1968) (STEWART, J., in chambers), it is equally clear that "such power should be used sparingly and only in the most critical and exigent circumstances." *Williams* v. *Rhodes,* 89 S. Ct., at 2, 21 L. Ed. 2d, at 70. Since this case does not meet that standard, I must deny the requested relief.

Applicants filed their complaint on July 2, 1976, attacking as unconstitutionally burdensome certain provisions of the Connecticut election law which apply to candidates seeking to get on the ballot by means of nominating petitions. They sought declaratory and injunctive relief against enforcement of only a small segment of this procedure—the prescribed method for filing the completed petitions. Conn. Gen. Stat. § 9–453a *et seq.* (1975).

In order to demonstrate a "significant modicum of support," *Jenness* v. *Fortson,* 403 U. S. 431, 442 (1971), Connecticut requires potential candidates to submit petitions signed by electors equal to one percent of the number who voted for the same office in the previous election. Conn. Gen. Stat. § 9–453d (1975). The petitions are available immediately after the last statewide election and do not have to be filed until nine weeks before the relevant election. § 9–453i. Thus, the numerical and time requirements of the statute are, as the District Court observed, "markedly more favorable" to the potential candidate than are constitutionally required. Civ. No. H–76–263 (Conn., July 2, 1976); see *Storer* v. *Brown,* 415 U. S. 724 (1974); *American Party of Texas* v. *White,* 415 U. S. 767 (1974); *Jenness* v. *Fortson, supra;* Note, Developments in the Law—Elections, 88 Harv. L. Rev. 1111, 1123–1130 (1975).

As a means of assuring the authenticity of the signatures collected, the law requires that the circulator sign a statement under penalty of perjury that (1) each signer of a petition

signed the petition in his or her presence, and (2) he or she either knew the signer, or the signer satisfactorily identified himself or herself to the circulator. This procedure must be performed personally before the town clerk in each town where any petition signer resides. Applicants do not object to the need for the circulator to make the required statement. They claim, however, that the requirement that it be done personally in front of numerous town clerks necessitates so much travel that it is unconstitutionally burdensome.[3] While acknowledging that the State has a valid and important interest in assuring the authenticity of the signatures and the eligibility of the signers, applicants argue that this interest can be served in ways less burdensome to the circulators.

The District Court, while sympathetic to this claim, did not rule on the merits, since it found applicants' suit barred by laches. It noted that applicants had tried and failed to qualify for a position on the ballot in a previous election. They were familiar with the statute and could have brought suit earlier. The delay meant that the legislature could not consider alternative filing requirements; instead, relief, if warranted, would have to be the drastic remedy of putting the candidates on the ballot, leaving the State with no protection of its interest in authenticity. Accordingly, the District

---

[3] Specifically, they object to those portions of Conn. Gen. Stat. §§ 9–453i and 453k (1975) which require:

1. "Each page of a nominating petition shall be submitted *by the person who circulated the same to the town clerk of the town in which the signers reside* . . . ." § 9–453i (emphasis supplied).

2. "The town clerk shall not accept any page of a nominating petition *unless the circulator thereof signs in his presence the statement* as to the *authenticity* of the signatures thereon required by section 9–453j." § 9–453k (a) (emphasis supplied).

3. "The town clerk shall *certify* on each such page that the circulator thereof signed such statement in his presence and that either he knows the circulator or that the circulator satisfactorily identified himself to the town clerk." § 9–453k (b) (emphasis supplied).

Court dismissed the action. The Court of Appeals, in an expedited appeal, affirmed without opinion.

Turning to the merits of the application, as I noted previously, the relief sought is extraordinary. So far as I am aware, a single Justice of this Court has ordered a State to put a candidate's name on the ballot only twice. *McCarthy* v. *Briscoe, ante,* p. 1317; *Williams* v. *Rhodes, supra.* This case lacks all the significant features warranting relief in those cases.

*McCarthy* presented "no novel issue of constitutional law." *Ante,* at 1320. In MR. JUSTICE POWELL's view, the Texas Legislature had adopted an " 'incomprehensible policy,' " amending its Election Code so as to preclude independent candidates for the office of President from qualifying for the general election ballot. *Ante,* at 1321. This deliberate refusal to provide access to independents was characterized by both the District Court and MR. JUSTICE POWELL as demonstrating an " 'intransigent and discriminatory position.' " *Ibid.* Thus, there was no question that Texas had clearly violated the constitutional requirements for ballot access.

In contrast, the constitutionality of the Connecticut statute is at best a close question. I have no doubt about the correct standard of review:

> "[W]hether the qualifications for ballot position are viewed as substantial burdens on the right to associate or as discrimination . . . their validity depends upon whether they are necessary to further compelling state interests. . . . [The limitations must be] reasonably taken in pursuit of vital state objectives that cannot be served equally well in significantly less burdensome ways." *American Party of Texas* v. *White, supra,* at 780–781.

Nevertheless, there is little precedent dealing specifically with filing procedures. Indeed, the one case touching on the subject, *American Party of Texas* v. *White,* suggests that a

requirement more burdensome than Connecticut's—that all signatures be notarized at the time they are collected—is not unconstitutional, at least absent more proof of impracticability or unusual burdensomeness than was before the Court. 415 U. S., at 787. Moreover, unlike the Texas law in *McCarthy* which provided no means of access whatever for an independent candidate, and the Ohio law which made it "virtually impossible" for a new political party to get on the ballot, *Williams* v. *Rhodes,* 393 U. S. 23, 25 (1968), Connecticut has one of the more liberal ballot-access statutes. Far from the intransigence found in *McCarthy,* here the Connecticut Legislature apparently sought to deal rationally with abuses it had encountered in the petitioning process. See Connecticut General Assembly, 7 House Proceedings 2313–2314 (1957).

Furthermore, while there may be less burdensome ways to authenticate signatures, the fact remains that a number of groups have successfully used the Connecticut procedures. Since 1968, four petitioning parties have qualified on a statewide basis under the same procedures now attacked. Affidavit of Henry Cohn, Elections Attorney and Director of the Elections Division of the Secretary of State's Office, Aug. 2, 1976. In addition, according to Mr. Cohn's later affidavit of September 17, 1976, it appeared that the United States Labor Party would qualify Presidential candidates this year. In view of this record showing that it is feasible to comply with the requirement under attack, applicants' claims that the statute is unduly onerous become less compelling. See *American Party of Texas* v. *White, supra,* at 779, 783–784. While I do not intimate that applicants may not ultimately prevail on the merits,[4] I do conclude that unlike *McCarthy,* the ques-

---

[4] I imply no view on the correctness of the dismissal of the action insofar as it seeks declaratory relief. Moreover, I note that that claim will not be rendered moot by the occurrence of the election or by our refusal to grant affirmative relief now. *American Party of Texas* v. *White,* 415 U. S., at 770 n. 1; *Storer* v. *Brown,* 415 U. S. 724, 737 n. 8 (1974).

tion is too novel and uncertain to warrant a single Justice's acting unilaterally to strip the State of its chosen method of protecting its interests in the authenticity of petition signatures.

In addition to these distinctions on the merits, there are several additional factors militating against the extraordinary relief sought. First, applicants delayed unnecessarily in commencing this suit. The statute is not a new enactment and applicants have, in fact, utilized it before. In 1972, the Communist Party unsuccessfully circulated petitions for Presidential electors. And in 1974, Joelle Fishman, one of the applicant-electors in this suit, successfully qualified as a petitioning candidate for Congress. Thus applicants were sufficiently familiar with the statute's requirements and could have sued earlier. Moreover, respondents strongly oppose the relief sought, claiming that an injunction at this time would have a chaotic and disruptive effect upon the electoral process. Defendants' Response in Opposition to Application 1. The Presidential and overseas ballots have already been printed; some have been distributed. The general absentee ballots are currently being printed. *Id.*, at 2. This stands in marked contrast to the situation in *Williams* v. *Rhodes*, where Ohio agreed that the American Independent Party could be placed on the ballot without disrupting the election. 89 S. Ct., at 2, 21 L. Ed. 2d, at 70; *Williams* v. *Rhodes*, 393 U. S., at 35. It also differs from *McCarthy*, where it appears that Texas had neither printed nor distributed any ballots when the injunction was issued. *Ante*, at 1323–1324, n. 4.

For these reasons, I conclude that the application should be denied.

*It is so ordered.*