92 P.3d 1063

**In the Matter of the Petition for Writ of Mandamus and/or for Writ of Prohibition.**

**Ronda GIBBONS and Roland Almgren, Petitioners,**

v.

**Pete CENARRUSA, Secretary of State, State of Idaho, Respondent.**

No. 28408.

Supreme Court of Idaho, Boise, May 2002 Term.

May 3, 2002.

Starr Kelso Law Office, Chtd., Coeur d'Alene, for petitioners.

Hon. Alan G. Lance, Attorney General, Boise, for respondent. Michael S. Gilmore argued.

SCHROEDER, Justice.

This is an original jurisdiction case in which the Petitioners seek an order declaring H.B. 425, which repealed the Term Limits Act passed as an initiative in 1994, unconstitutional, and an order directing the Secretary of State to instruct all county clerks to comply with the Term Limits Act. The Court expedited hearing on the case and directed the parties to submit briefs setting forth their respective positions. Those briefs have been submitted and reviewed by the Court. Oral argument has been heard.

## I.

### FACTS AND PROCEDURAL HISTORY

In 1994 the term Limits Act was passed as a citizen's initiative. This Court held that the Term Limits Act was constitutional. At its last session, the Idaho Legislature passed H.B. 425, which repealed the Term Limits Act. In the body of the law the legislature declared that an emergency existed so that the repeal would become effective on February 1, 2002, rather than July 1, 2002. The Governor vetoed the bill, but the legislature overrode the veto, and the repeal became effective February 1.

Petitioner Gibbons is a resident of Ada County who has filed for the Ada County Commissioner's position currently held by an incumbent who would be ineligible to have his name on the ballot under the Term Limits Act. Petitioner Almgren is a voter in Kootenai County who voted in favor of the Term Limits Act in the 1994 general election.

The Petitioners have filed for a writ of mandamus or a writ of prohibition to declare H.B. 425 unconstitutional, or at least not effective until July 1, 2002, after the primary election will have taken place. In the alternative the Petitioners ask the Court to issue a peremptory writ of mandamus or peremptory writ of prohibition, ordering that the Secretary of State order all county clerks to comply with the Term Limits Act.

## II.

### THIS DISPUTE IS RIPE FOR A DECISION AND AT LEAST ONE PETITIONER HAS STANDING TO BRING THIS ACTION

#### A. Ripeness

Ripeness is one element that must be satisfied for there to be a live case or controversy appropriate for judicial review. "Ripeness asks whether there is any need for court action at the present time." *Miles v. Idaho Power Co.*, 116 Idaho 635, 642, 778 P.2d 757, 764 (1989). The Secretary states that the repealed sections of the initiative have no effect upon any candidate who has filed a declaration of candidacy with the Secretary of State—those statewide officers who would have been subject to term limits have not filed for reelection. The Secretary also argues that his office has no direct supervisory authority over the county clerks, so no writ of mandamus or prohibition would be effective against the county clerks.

The primary election is scheduled for May 28, 2002. The term limits repeal impacts the primary election. If the repeal is invalid, candidates who would otherwise be eligible to be on the ballot will not be eligible. Those potential candidates, the county clerks and the public alike have a need to know who can and who cannot appear on the ballot before the primary election is held. A decision by the Court that will allow the electoral process to proceed with certainty is necessary. The case is ripe for review.

#### B. The Role Of The Secretary Of State

The Secretary of State is a proper respondent in this case. I.C. § 34–201

states, "Secretary of state chief election officer.—The secretary of state is the chief election officer of this state, and it is his responsibility to obtain and maintain uniformity in the application, operation and interpretation of election laws." Further, I.C. § 34-202 states that, "[i]n carrying out his responsibility under section 17 [§ 34-201], the secretary of state shall cause to be prepared and distributed to each county clerk detailed and comprehensive written directives and instructions relating to and based upon the election laws as they apply to elections, registration of electors and voting procedures which by law are under the direction and control of the county clerk." I.C. § 34-203 states, "[i]n carrying out his responsibility under Section 17 [§ 34-201], the secretary of state shall assist and advise each county clerk with regard to the application, operation and interpretation of the election laws as they apply to elections, registration of electors and voting procedures which by law are under the direction and control of the county clerk."

The Secretary of State has the responsibility of issuing directives and instructions to the county clerks for compliance with the election laws, which could be that certain candidates would be ineligible because of term limits.

The Secretary of State is a proper party.

**C. Standing**

■ "It is a fundamental tenet of American jurisprudence that a person wishing to invoke a court's jurisdiction must have standing." *Van Valkenburgh v. Citizens for Term Limits,* 135 Idaho 121, 125, 15 P.3d 1129, 1132 (2000). "The doctrine of standing focuses on the party seeking relief and not on the issues the party wishes to have adjudicated." *Miles,* 116 Idaho at 641, 778 P.2d at 763. In order to satisfy the requirement of standing, a party must "allege or demonstrate an injury in fact and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury." *Id.* However, "a citizen and taxpayer may not challenge a governmental enactment where the injury is one suffered by all citizens and taxpayers

alike." *Id.* As such, a party must "establish a peculiar or personal injury that is different than that suffered by any other member of the public." *Selkirk–Priest Basin Ass'n v. State,* 128 Idaho 831, 833–34, 919 P.2d 1032, 1034–35 (1996).

■ Almgren argues that he has standing because he is a voter who voted in favor of the term limits initiative in 1994. Gibbons is running for the Ada County Commissioner seat against an incumbent who would be ineligible to run for office if the repeal were deemed unconstitutional.

Regardless of whether Almgren has standing, it is clear that Gibbons has standing—she is running for election against an opponent who would be ineligible to run for office if the repeal of the Term Limits Act were unconstitutional. The legislature's repeal impacts her campaign, and she demonstrates a particularized and sufficient injury to establish standing.

**III.**

**CONSIDERATION OF THE PETITION FOR WRIT OF PROHIBITION OR WRIT OF MANDAMUS IS APPROPRIATE IN THIS CASE**

■ The Secretary argues that the writs requested should not issue because the Petitioners seek action that the Secretary of State has no authority to take, that the Petitioners did not pursue an adequate remedy at law and that they delayed their petition to the detriment of others. Writs of prohibition are extraordinary and are issued with caution. *Crane Creek Country Club v. City of Boise,* 121 Idaho 485, 487, 826 P.2d 446, 448 (1990).

The Secretary maintains that the writ should not issue because the Petitioners are asking the Court to expand the Secretary's duties. This is not correct. The Petitioners seek directions and instructions from the Secretary to the county clerks to comply with the term limits initiative, which the Secretary may do under I.C. § 34-202 and § 203.

The Secretary also argues that under I.C. § 34-215, any person adversely affected by a county clerk's actions could sue in the district

court in the county in which the alleged wrongful act occurred. In this situation this could result in suits in numerous counties, the potential of inconsistent results, and the possibility of actions in the district courts following the primary election. In fact, a suit has been filed in district court in Ada County prior to filing this action challenging the validity of the repeal on different grounds. Hearing in that case is scheduled too late for a decision that would allow an orderly primary election with certainty as to who could properly be on the ballot. The resolution of the issue before the primary is critical to the electoral process. It is appropriate for this Court to act.

The Secretary also argues that the Petitioners delayed to the detriment of others, and that it is too late for the writs to issue. Particularly, the Secretary argues that the county clerks have already certified local candidates and that some clerks will have already begun mailing absentee ballots by the time of oral argument. The Secretary cites *Fishman v. Schaffer*, 429 U.S. 1325, 97 S.Ct. 14, 50 L.Ed.2d 56 (1976) in which a writ was sought before an election. In his capacity as Circuit Justice, Justice Marshall stated, "respondents strongly oppose the relief sought, claiming that an injunction at this time would have a chaotic and disruptive effect on the electoral process. . . . For these reasons, I conclude that the application should be denied." *Fishman*, 429 U.S. at 1330, 97 S.Ct. at 17, 50 L.Ed.2d at 61.

Timing is clearly a critical concern in this case. This Court has expedited the case and renders its decision on the merits to allow the primary election to proceed with certainty as to the current state of the law.

## IV.

## THE LEGISLATURE MAY REPEAL THE INITIATIVE IMMEDIATELY BY DECLARING AN "EMERGENCY" TO EXIST

■ The people's right to pass initiatives is contained in Article III, § 1 of the Idaho Constitution. It states:

The people reserve to themselves the power to propose laws, and enact the same at the polls independent of the legislature. This power is known as the initiative, and legal voters may, under such conditions and in such manner as may be provided by acts of the legislature, initiate any desired legislation and cause the same to be submitted to the vote of the people at a general election for their approval or rejection provided that legislation thus submitted shall require the approval of a number of voters equal to a majority of the aggregate vote cast for the office of governor at such general election to be adopted.

In *Luker v. Curtis*, 64 Idaho 703, 136 P.2d 978 (1943), the Court held that the legislature has the authority to repeal a law passed as the result of an initiative. The Court noted that the initiative provision of the constitution places no limitation on the power of amendment or repeal of an initiative act and found that laws passed through this manner are on equal footing with legislative acts:

It is contended, however, that the legislature has no power or authority to amend or repeal an initiative act, for the alleged reason that an initiative act comes directly from the people. That may very well be answered by the fact that the legislators, who convene on the first Monday of January, following adoption of initiative measures, also come direct from the people, having been elected at the same time and by the same electors who adopted the initiative measure. If the legislature repeals or amends an initiative act, the people have at least two remedies, both of which they may exercise at the same time, to redress their grievance, if indeed they have a grievance, over the act of the legislature: First, they may reenact the measure by another initiative and, second, at the same time and at the same election, may elect other members of the legislature who will, or may, better heed their wishes.

*Luker*, 64 Idaho at 706–07, 136 P.2d at 979–80.

The initiative process takes place outside the legislature, and the Petitioners concede in briefing that the legislature can repeal a law resulting from an initiative. However, they argue that the legislature may only *do* so with ordinary legislation, not emergency

legislation. The Petitioners rely on a passage in *Luker* in which the Court stated:

> In those jurisdictions where the Constitution does not specifically prohibit the Legislature from repealing initiation legislation, it is commonly held by the courts of such jurisdictions that acts so passed are subject to repeal by the Legislature in the same manner as other ordinary legislative measures are repealed.

*Id.* at 711, 136 P.2d at 982.

■■■ The legislature cannot violate the reserved right of the people to propose laws and enact them at the polls. That process is, in the language of Article III, Section 1 of the Constitution, "independent of the legislature." However, as determined in *Luker*, once a law is enacted in the initiative process it is like any other law. It may be amended or repealed by the legislature or subsequent initiative. The Petitioner argues that this language means that the law could only go into effect in the "normal" time frame. However, the language in *Luker* does not mean that the legislature cannot change the effective date of the legislation by declaring an emergency. Initiatives and laws passed by the legislature are on equal footing. The legislature may change the effective date of any law it passes. This legislative right includes repeal of an initiative, which once enacted, is treated as "other ordinary legislative measures."

The authority to determine the effective date of legislation is contained in Article III, § 22 of the Idaho Constitution, which states:

> When acts take effect.—No act shall take effect until sixty days from the end of the session at which the same shall have been passed, except in the case of emergency, which emergency shall be declared in the preamble or in the body of the law.

Legislative discretion in declaring emergencies was recognized in *Johnson v. Diefendorf,* 56 Idaho 620, 635, 57 P.2d 1068, 1083 (1936), which stated, "it is left to the discretion of the legislature to fix the time when [the act] shall go into effect." *Johnson* did not raise the issue of whether a court could review the legislature's declaration that an emergency existed. That issue was resolved in *Idaho State AFL–CIO v. Leroy,* 110 Idaho 691, 718 P.2d 1129 (1986). The Court stated: "we hold that the legislature's determination of an emergency in an act is a policy decision *exclusively* within the ambit of legislative authority and the judiciary cannot second-guess that decision." *Id.* at 698, 718 P.2d at 1136 (emphasis added). The Petitioners argue that this statement is inapplicable if the repeal infringes a constitutional right but they do not identify a constitutional right that is infringed by the declaration of an emergency in this case.

In *Leroy*, this Court concluded that *Johnson* must be read in conjunction with *Diefendorf v. Gallet,* 51 Idaho 619, 10 P.2d 307 (1932). In *Gallet* this Court held that the judiciary could not review the governor's determination that an emergency existed to justify calling an extraordinary session of the legislature, and that the Court could not review the legislature's determination that an emergency existed to justify dispensing with the constitutional requirement that before an act could be passed, it must be printed and read on three separate days in each house. 51 Idaho at 638–39, 10 P.2d at 314–15. The Court stated, "[t]he determination as to whether facts exist such as to constitute 'an extraordinary occasion' is for him [the governor] alone to determine." *Id.*

The justification for legislative discretion in this area is that the decision to declare an emergency is "a decision-making function that is uniquely legislative. The courts are ill equipped to make such policy decisions." *Leroy,* 110 Idaho at 695, 718 P.2d at 1133. "The respect due to the co-equal and independent legislative branch of state government and the need for finality and certainty about the status of a duly enacted statute contribute to the reluctance of the courts to inquire into whether the legislature's determination of an effective date is justified." *Id.* Justice Shepherd, concurring in *Assoc. Taxpayers of Idaho, Inc. v. Cenarrusa,* 111 Idaho 502, 725 P.2d 526 (1986), stated that "[i]n my view it is exceedingly dangerous for this Court, or any court, to interfere with the legislative *process.* Within the duties of this Court is the determination of the constitutionality of actions of other branches of government but only when the time and circum-

stances are appropriate." *Assoc. Taxpayers,* 111 Idaho at 503, 725 P.2d at 527 (emphasis in original). In this case the Petitioners are asking the Court to interfere with the legislative process, and this Court has held repeatedly that it is not proper to do so.

The Petitioners also argue that the Idaho Constitution requires that the legislature define the emergency when it declares one in an act. The Petitioners rely upon Article III, § 22 of the Constitution, noting that under that section, a law goes into effect 60 days from the end of the session except in case of emergency, "which emergency" is to be declared in the preamble or the body of the law. This language does not require definition of the emergency. It simply requires that the statement of an emergency be set forth either in the preamble or the body of the law. The Legislature is not called upon by the Idaho Constitution to define "which" emergency out of any number of choices that might present themselves.

## V.

## THE SECRETARY OF STATE IS NOT ENTITLED TO ATTORNEY FEES

The Secretary of State seeks attorney fees under I.C. § 12–121, Idaho Appellate Rules 11.1, 35(b)(5) and, and 41, arguing that the Petitioners failed to identify controlling case law in the brief and have not pursued the petition consistent with Idaho Appellate Rule 11.1. The request for attorney fees is denied.

## VI.

## CONCLUSION

The request for a writ of prohibition or mandamus is denied and the petition is dismissed. The Respondent is awarded costs. No attorney fees are allowed.

Justice WALTERS and Pro tem Justices WESTON and SCHILLING concur.

Justice KIDWELL, Specially Concurring.

The underlying issue before us is whether the Idaho Constitution and laws allow the state legislature to repeal a law that started life as an initiative. The wisdom of term limits or the judgment of the legislature in repealing term limits legislation is the prov-

ince of the legislative branch of Idaho government.

The majority opinion addresses most of the relevant issues this perplexing public issue raises. Therefore, I concur with the analysis and conclusions set forth by the majority. I write separately because I believe it is necessary to discuss the constitutional problem articulated by Chief Justice Holden in his dissent in *Luker v. Curtis,* 64 Idaho 703, 136 P.2d 978 (1943).

On April 17, 2002, this Court set the present action for an expedited hearing, and very specifically asked the parties to address Article 3, § 1 of the Idaho Constitution.

The part of Article 3, § 1 of the Idaho Constitution that needs clarification states, "The people reserve to themselves the power to propose laws, and enact the same at the polls *independent of the legislature.* This power is known as the initiative...." (emphasis added). The dissent in *Luker,* by Chief Justice Holden, raises the interesting question—what does "independent of the legislature" mean?

In *Luker,* Article 3, § 1 was the issue before the Court. The *Luker* Court held that statutes initiated by the people and statutes enacted by the legislature were on equal footing. *Id.* at 706, 136 P.2d at 979. In his dissent, Chief Justice Holden contended that the majority's opinion had the effect of rendering Article 3, § 1 "a mere worthless 'scrap of paper.' " He argued that allowing the legislature the power to repeal initiated legislation annulled that provision of the Constitution and also rendered it "useless, absurd, and ridiculous." *Id.* at 715–16, 136 P.2d at 984.

However, on a less harsh note, I believe that "independent of the legislature" applies to the people's *power* and *ability* to propose laws through the initiative process, free from interference by the legislature. A proposed initiative cannot be amended, reviewed, or thwarted by the legislature. The initiative power is reserved to the people and is to be exercised without intrusion by the legislature. It is this power reserved to the people that this Court must adamantly preserve and protect.

However, once an initiative is voted upon and becomes a law, then, as the *Luker* court

**322**

held, it is on equal footing with legislative acts. A close reading of the *Luker* majority opinion reveals that the terms "law" and "initiative" are unfortunately used interchangeably. This is incorrect in my opinion. It needs to be made clear that the legislature can amend or repeal a law that resulted from the initiative process, but cannot interfere with the initiative itself. Whether proposed legislation is passed by the legislature, passed by the people as an initiative, or approved by the people as a referendum, the resulting law is equal to other laws. The terms "law" and "initiative" should not be used interchangeably. A law, even if it began as an initiative, may be amended or repealed by the legislature without violating Article 3, § 1 of the Idaho Constitution.

The majority holding today is in accord with *Luker*, but does not address the ambiguity or question raised by Chief Justice Holden's dissent. In my view, the majority opinion not only agrees with *Luker*, it is compatible with the questions raised in the *Luker* dissent if the analysis herein is followed. I agree with the decision to affirm the *Luker* Court's holding that a law resulting from an initiative is on equal footing with a law resulting from a legislative act. Here, the legislature has acted, perhaps unwisely, but within the Constitution of the State of Idaho.