**W & F BUILDING MAINTENANCE COMPANY, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 97–332C.**

United States Court of Federal Claims.

March 28, 2003.

George David Nied, San Francisco, California, attorney of record for plaintiff.

Monica Jane Palko, Department of Justice, Washington, D.C., with whom was Assistant Attorney General Robert D. McCallum, Jr., for defendant. David M. Cohen, Director, and Bryant G. Snee, Assistant Director. Major Michael Welsh, United States Air Force, of counsel.

## OPINION

FUTEY, Judge.

This case is before the court on defendant's affirmative defense of accord and satisfaction. Defendant asserts that plaintiff's equitable adjustment claim is barred by an earlier settlement agreement between the parties. Defendant maintains that the plain language of the settlement agreement and modification is unambiguous and should be construed as written. Plaintiff avers, however, that the language of the settlement agreement is ambiguous as to its scope and as to the meaning of the term "claims." Further, plaintiff contends that the equitable adjustment claim was not discussed during settlement negotiations and, therefore, the settlement agreement and modification cannot be an accord and satisfaction of said claim. Plaintiff also alleges that the administrative contracting officer (ACO) told its president that the equitable adjustment claim would be addressed after the defective pricing claim was resolved. In addition, plaintiff asserts that the ACO indicated to its president that the equitable adjustment claim was not a "claim." Defendant denies that the ACO made the alleged representations.

1. Contract No. F04699–83–C–0002.

2. The initial contract period was from October 1, 1982, to September 30, 1983. Transcript of Hearing (Tr.) at 154. After the initial contract expired, defendant exercised two option periods; the first from October 1, 1983, to September 30, 1984, and the second from October 1, 1984, to

## Factual Background

In 1965, W & F Building Maintenance Company, Inc., plaintiff, was founded by its current president, Mr. John S. Foggy. Plaintiff initially provided custodial services to commercial buildings, but in the early 1970s began providing custodial services to the United States government. Pursuant to Section 8(a) of the Small Business set-aside program, plaintiff was awarded a contract in 1978 to provide building maintenance and custodial services at McClellan Air Force Base in Sacramento, California. On September 27, 1982, plaintiff was awarded a follow-on contract for similar work as provided in the 1978 contract.[1] The contract performance period began on October 1, 1982, and extended through January 31, 1986.[2]

In 1985, the Defense Contract Auditing Agency began performing a defective pricing investigation of said contract. Prior to the conclusion of the investigation, plaintiff and the government negotiated a $414,121.52 increase in the contract price as a result of the United States Department of Labor's wage determinations. On July 20, 1987, the United States Air Force (Air Force) issued a final decision in this investigation concluding that the total amount of the defective pricing was $80,374 and accordingly withheld that amount from the agreed-upon wage determination payment. Plaintiff disputed the Air Force's assessment, and on July 19, 1989, filed a complaint in this court.[3] On November 22, 1989, the parties entered into a settlement agreement that stipulated to the dismissal of plaintiff's complaint with prejudice. The parties also agreed that plaintiff would accept a $37,000 contract price reduction and that defendant would issue payment to plaintiff in the amount of $43,374. Subsequently, on January 31, 1990, the parties entered into Modification No. 21 to the contract which adjusted payment pursuant to the terms of the settlement agreement. It is the settle-

June 30, 1985. *Id.* at 154–55. Subsequently, the contract was extended through January 31, 1986. *Id.* at 35, 117.

3. *W & F Building Maintenance, Co., Inc. v. United States,* No. 416–88 (Cl.Ct. July 19, 1988).

ment agreement and modification that form the basis of the matter before the court.

The pertinent language of the settlement agreement provided:

For the purpose of settling this action without any further proceeding ... and for no other purpose, the parties stipulate and agree as follows:

. . . .

 *This agreement is for the purpose of settling all claims relating to the contract, irrespective of whether they are set forth in the pleadings in the above captioned action and for no other.* This agreement shall not bind the parties nor shall it be cited or otherwise referred to in any proceedings, whether judicial or administrative in nature, in which the parties or counsel for the parties have or may acquire an interest, except as is necessary to effect the terms of this stipulation.

 This stipulation is without regard to and shall not be construed as determining the amount of income taxes for which plaintiff is now liable or may become liable in the future as a result of this stipulation.

. . . .

 This stipulation is for the purpose of settling the matters discussed in this stipulation and no others.[4]

Further, Modification No. 21 to the contract reads as follows: "This modification constitutes full and final release and accord and satisfaction of any and all claims under this contract, pursuant to settlement agreement No. 416–88C dated November 1989 in the United States Claims Court."[5] An attachment to Modification No. 21 also stated:

The purpose of this contract modification is to document settlement of the Government's claim against [plaintiff] .... The settlement price ... represents complete and final settlement of this govern-

ment claim under the [defective pricing clause] .... Other terms and conditions contained in the settlement agreement are incorporated into this modification .... All other terms and conditions of the contract remain unchanged.[6]

The parties diverge in their respective interpretations of the events and negotiations leading up to the settlement agreement and modification. According to plaintiff, Mr. Foggy sent a series of letters to the ACO, Ms. Emma Jean Hilding, from 1985 to 1990 which referenced the equitable adjustment claim.[7] Defendant concedes that plaintiff's letters bore the correct address, but denies ever receiving the letters.[8] Plaintiff also maintains that the ACO told him that the equitable adjustment claim would be addressed after the defective pricing claim was resolved. Further, plaintiff contends that the ACO indicated that the equitable adjustment claim was not a "claim" until it was certified by the contractor and presented to the contracting officer (CO) for a decision.[9] Defendant denies that either of the aforementioned conversations occurred. Both parties agree, however, that the equitable adjustment claim was not specifically discussed in negotiations leading up to the settlement agreement and modification.[10]

On May 13, 1997, plaintiff filed this action seeking an equitable adjustment pursuant to the Variation in Workload provision (H–22) of the contract. On October 17, 1997, defendant filed a motion to dismiss, or in the alternative, for summary judgment, based on the affirmative defense of laches. Defendant asserted that plaintiff unreasonably delayed pursuing the equitable adjustment claim. Defendant also contended that the government was prejudiced because all government documents relating the contract were destroyed in January 1996 pursuant to

---

4. Defendant's Exhibit (Def.'s Ex.) 2002 (emphasis added).

5. Def.'s Ex.2006.

6. *Id.*

7. Plaintiff's Exhibits (Pl.'s Ex.) 1031, 1032, 1033, 1034, 1035.

8. Tr. at 180–83.

9. *Id.* at 57–59, 101–02, 105–06, 157; see also Plaintiff's Memorandum Of Facts And Law Following Evidentiary Hearing On Defendant's Affirmative Defenses (Pl.'s Mem.) at 9–10, 12, 16, 18.

10. Tr. at 55–56, 101, 103.

standard agency procedure and that government personnel who administered the contract were no longer government employees. Although the trial judge denied defendant's summary judgment motion on November 1, 1999, the trial judge also indicated that he would entertain additional arguments concerning laches "at the same [time the parties tried] the merits of this case." [11] Subsequently, defendant answered plaintiff's complaint on January 18, 2000, and as an affirmative defense asserted that plaintiff's complaint was barred by accord and satisfaction. Due to the untimely death of the predecessor judge, the case was transferred to the undersigned judge on September 5, 2001. After additional discovery and pleadings, the court held a one-day hearing on January 24, 2003, to ventilate the facts concerning defendant's affirmative defenses.

### Discussion

An accord is reached when one party agrees to supply or perform and the other party agrees to accept, in settlement or satisfaction of an existing claim, something other than that which was actually due. *Chesapeake & Potomac Tel. Co. of Virginia v. United States*, 228 Ct.Cl. 101, 106, 654 F.2d 711 (1981). Satisfaction is the actual execution and/or performance of the agreement. *Id.* "In its most common form, an accord and satisfaction exists as 'a mutual agreement between the parties in which one pays or performs and the other accepts payment or performance in satisfaction of a claim or demand which is a bona fide dispute.'" *O'Connor, et al. v. United States*, 308 F.3d 1233, 1240 (Fed.Cir.2002) (citation omitted). Accord and satisfaction is an affirmative defense and defendant bears the burden of persuasion. See RCFC 8(c).

Four elements are necessary in order to execute a valid accord and satisfaction: (1) proper subject matter; (2) competent parties; (3) a meeting of the minds of the parties; and (4) consideration. *O'Connor*, 308 F.3d at 1240 (citing *Brock & Blevins Co. v. United States*, 170 Ct.Cl. 52, 56, 343 F.2d 951 (1965)). The absence of any of the aforementioned elements results in a failure of the defense. *Westerhold v. United States*, 28 Fed.Cl. 172, 175 (1993). Further, the intention of the parties is a critical element of an accord and satisfaction. *Tri–O, Inc. v. United States*, 28 Fed.Cl. 463, 470 (1993). The court discerns whether there was a meeting of the minds from the totality of the factual circumstances. *Texas Instruments, Inc. v. United States*, 922 F.2d 810, 815 (Fed.Cir. 1990). "Accord and satisfaction denotes 'one of the recognized methods of discharging and terminating an existing right' and constitutes 'a perfect defense in an action for the enforcement of a previous claim, whether that claim was well-founded or not.'" *National Steel and Shipbuilding, Co. v. United States*, 49 Fed.Cl. 579, 589 (2001) (citation omitted).

First, there is no dispute that the parties were represented by competent counsel and that the parties were of sound mind to enter into the agreement. The settlement agreement and modification were also the result of bilateral and voluntary negotiations.[12] Second, contrary to plaintiff's assertion,[13] the settlement agreement and modification were supported by consideration.[14] Defendant paid plaintiff $43,374,[15] and in turn, both parties relinquished their right to any entitlements under the contract. Therefore, the parties were competent and consideration was present.

The court next turns to the crux of the issue. Plaintiff's argument concerns the subject matter of the accord and whether there

---

**11.** Oral Argument on Defendant's Motion To Dismiss, Or In The Alternative, For Summary Judgment at 34 (October 29, 1999).

**12.** Tr. at 33, 37, 121–25, 149–50.

**13.** *Id.* at 156.

**14.** See 2 Blackstone, Commentaries on the Law of England 440 (1766) ("peppercorn"); Restatement (Second) of Contracts § 71(1) (1981) ("To constitute consideration, a performance or a return promise must be bargained for.").

**15.** Def.'s Ex.2007 (United States Department of the Treasury check dated February 2, 1990, which was issued to plaintiff in the amount of $43,374); see also Def.'s Ex.2004.

was a meeting of the minds.[16] In other words, plaintiff asserts that the "accord" aspect of an accord and satisfaction is lacking.[17] Plaintiff maintains that the settlement agreement is ambiguous because it contains the phrases "for no other purpose" and "for no other." Plaintiff also contends that term "claims" only included claims which were certified and submitted to the CO, or claims which were filed in a "tribunal."[18] Plaintiff's argument then shifts from the text of the settlement agreement and modification to the events and circumstances leading up to their execution. In particular, plaintiff proffered five letters from 1985 to 1990 which referenced the equitable adjustment claim. Plaintiff also maintains that the equitable adjustment claim was not discussed during the parties' negotiations and, therefore, the parties did not execute an effective accord and satisfaction of said claim. Further, Mr. Foggy testified that the ACO told him that the equitable adjustment claim would be addressed after the defective pricing claim was resolved. Mr. Foggy also testified that the ACO indicated that he did not have a "claim" for an equitable adjustment.[19]

Defendant avers that the court should uphold the intent of the parties as evidenced through the language of the settlement agreement and modification. Stated another way, defendant asserts that the settlement agreement and modification were a valid accord and satisfaction and their plain language unequivocally discharged "any and all claims" under the contract. In addition, to rebut plaintiff's extrinsic evidence, the ACO testified that she neither discussed the defective pricing claim with plaintiff nor told Mr. Foggy to postpone pursuing any entitlement regarding an equitable adjustment.[20] The ACO also testified that she does not remember receiving any of Mr. Foggy's letters and that she did not tell Mr. Foggy that the equitable adjustment claim was not a "claim." Further, Colonel Samuel S. Bagley[21] testified that defendant intended to settle all claims under the contract.[22]

■ The general rule is that parol evidence may not be used to vary the unambiguous terms of a contract. *A Olympic Forwarder, Inc. v. United States*, 33 Fed.Cl. 514, 524 (1995). "This court has ... allowed presentation at trial of all testimony or extrinsic evidence to determine the completeness of the contract in issue." *Zueblin v. United States*, 44 Fed.Cl. 228, 233 (1999) (quoting *Design and Production, Inc. v. United States*, 18 Cl.Ct. 168, 195 (1989)). Parol or extrinsic evidence "must be admissible on the issue of the extent to which a written agreement is integrated, for ... the writing cannot prove its own integration." *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1434 (Fed.Cir.1996) (citing *Sylvania Elec. Prods., Inc. v. United States*, 198 Ct.Cl. 106, 118, 458 F.2d 994 (1972)). The court discerns the completeness of the agreement through "the writing itself, the context of its execution, and any evidence of the negotiations which led to the agreement." *Design and Production*, 18 Cl.Ct. at 195 (citing *David Nassif Assocs. v. United States*, 214 Ct.Cl. 407, 414,

---

16. For purposes of the court's inquiry, these two elements are in essence intertwined. In order for there to have been a meeting of the minds, the parties must have considered the same claims as the subject matter of the settlement agreement and modification.

17. Pl.'s Mem. at 12.

18. Plaintiff's argument shifts between two interpretations of the term "claims." Plaintiff first argues that he "understood a 'claim' to mean 'when you actually ... file a claim, either to the military board or in the court,' i.e., what is commonly understood to be a 'complaint.'" Pl.'s Mem. at 9 (quoting Tr. at 101–02). Stated another way, "[i]n Mr. Foggy's mind, a claim referred to the filing of a formal, legal complaint

or claim with a tribunal." Pl.'s Mem. at 16. Next, plaintiff contends that the equitable adjustment claim was not a "claim" because plaintiff "had not even submitted a 'claim' to the contracting officer within the meaning of the Contract Disputes Act." *Id.* at 18.

19. Tr. at 105–06, 157; see also Pl.'s Mem. at 10–11.

20. Tr. at 179–80.

21. At the time the settlement agreement was entered into, Colonel Bagley was the attorney of record for defendant. *Id.* at 30–31; Def.'s Ex.2001.

22. Tr. at 37–38, 42, 65.

557 F.2d 249 (1977)).[23] It is therefore appropriate for the court to consider the extrinsic evidence proffered by plaintiff to ascertain the completeness of the settlement agreement and modification.

The applicability of plaintiff's extrinsic evidence will hinge on the completeness of the settlement agreement and modification. If the court concludes that the settlement agreement and modification were partially integrated, extrinsic evidence would be admissible to the extent that it explains or supplements the writing. *Marathon Oil Co. v. United States*, 42 Fed.Cl. 267, 274 (1998) (citing *Design and Production*, 18 Cl.Ct. at 195). If the court finds that the settlement agreement and modification were a complete integration, the writing can neither be explained nor supplemented by extrinsic evidence. See *Marathon Oil*, 42 Fed.Cl. at 275. In either case, however, whether the writing is partially integrated or completely integrated, extrinsic evidence will not be accepted to contradict the terms of the agreement. *Design and Production*, 18 Cl.Ct. at 195.

■ The court's analysis begins with the language of the settlement agreement and modification which "represents the best source of evidence regarding intent." *McLain Plumbing & Elec. Serv., Inc. v. United States*, 30 Fed.Cl. 70, 81 (1993).[24] The modification provided that the parties intended it to be the "*full and final* release and accord and satisfaction of any and all claims under this contract . . . ."[25] Given this attestation of completeness, plaintiff carries a heavy burden when arguing to the contrary. See *McAbee*, 97 F.3d at 1434. Nevertheless, the language contained in the modification is indicative, but not dispositive, of the parties' intent. The court is permitted to examine the extrinsic evidence proffered by plaintiff.

*Zueblin*, 44 Fed.Cl. at 233; *Design and Production*, 18 Cl.Ct. at 195 (citation omitted). Plaintiff's extrinsic evidence, however, fails to establish that the settlement agreement and modification were not intended to be a complete and final expression of all terms in the parties' agreement. Rather, the parties' intent, as discerned by the court, was to "full[y] and final[ly]" resolve alleged liability and purported damages under the contract without resort to written or verbal evidence outside of the agreements themselves. Accordingly, the court can only conclude that the settlement agreement and modification were completely integrated.

At this juncture, plaintiff runs squarely into the thrust of the parol evidence rule. The general rule is that where a contract is unambiguous, parol evidence may not be used to vary the terms of an agreement. *A Olympic Forwarder*, 33 Fed.Cl. at 524. Because the court has concluded that the settlement agreement and modification were completely integrated, plaintiff is precluded from introducing any extrinsic evidence that would explain, supplement, or contradict the terms of the agreement. *Design and Production*, 18 Cl.Ct. at 195 (citation omitted). Having considered plaintiff's extrinsic evidence when ascertaining the completeness of the settlement agreement and modification, the court holds that plaintiff's extrinsic evidence is nevertheless prohibited by the parol evidence rule for the purpose of varying the unambiguous terms of the agreement.[26]

■ The court's analysis of whether there was a meeting of the minds, therefore, focuses on the language of the settlement agreement and modification. Although plaintiff's extrinsic evidence was deemed inadmissible for the purpose of varying the

---

**23.** See also Corbin, *The Parol Evidence Rule*, 53 Yale L.J. 603, 630 (1944).

**24.** See also E. Allan Farnsworth, Farnsworth on Contracts § 7.3, at 216–25 (2d ed.1998).

**25.** Def.'s Ex.2006 (emphasis added).

**26.** Despite its far-reaching ambit, the parol evidence rule can be rendered inapplicable in limited circumstances. Extrinsic evidence is admissible to prove that the written agreement was procured by one of the parties through fraud or

misrepresentation on which the other party reasonably relies. *C & H Commercial Contractors, Inc. v. United States*, 35 Fed.Cl. 246, 254 (1996). During the hearing, the court inquired of plaintiff whether a misrepresentation argument was being advanced. Tr. at 165. Plaintiff, however, disavowed such an argument. *Id.* at 165–66. It is, therefore, unnecessary to further address the issue. The court merely notes that the ACO denied that the conversations on which plaintiff relies ever took place. *Id.* at 179–80, 194–95.

unambiguous terms of the agreements, it does not follow that the court is altogether precluded from considering plaintiff's extrinsic evidence at this stage of the inquiry. *Marathon Oil,* 42 Fed.Cl. at 275 (citation omitted). Apart from limited exceptions where the parol evidence rule does not operate to exclude extrinsic evidence, said evidence is independently admissible to aid in the interpretation of ambiguous contractual terms. *McAbee,* 97 F.3d at 1434–35.[27] Plaintiff's claim now rests on the clarity of the express language of the settlement agreement and modification.

A settlement agreement is a contract and its interpretation is governed by traditional contract principles. *King v. Dep't of the Navy,* 130 F.3d 1031, 1033 (Fed.Cir.1997). If the contractual terms are clear and unambiguous, the court's analysis is guided solely by the plain language of the contract. *National Rural Utils. Coop. Finance Corp. v. United States,* 14 Cl.Ct. 130, 138–40 (1988), *aff'd,* 867 F.2d 1393 (Fed.Cir.1989). "[E]xtrinsic evidence will not be received to change the terms of a contract that is clear on its face." *Beta Sys., Inc. v. United States,* 838 F.2d 1179, 1183 (Fed.Cir.1988); *Interwest Constr. v. Brown,* 29 F.3d 611, 615 (Fed.Cir.1994) ("[E]xtrinsic evidence ... should not be used to introduce an ambiguity where none exists.").

On the other hand, if the contractual terms are ambiguous, the court may use extrinsic evidence to resolve the ambiguity to the extent the final expression is not contradicted. *McAbee,* 97 F.3d at 1434–35; *Marathon Oil,* 42 Fed.Cl. at 275 (citation omitted). An ambiguity, however, is not generated merely because the parties differ in their respective interpretations, but occurs when the contract is susceptible to more than one reasonable interpretation. *Metric Constructors, Inc. v. NASA,* 169 F.3d 747, 751 (Fed. Cir.1999) ("both interpretations' must fall within a 'zone of reasonableness.'"); *Edward R. Marden Corp. v. United States,* 803 F.2d

701, 705 (Fed.Cir.1986). Before making a conclusive determination about an agreement's ambiguity, or lack thereof, the court should consider the context in which the agreement was executed. *Metric Constructors,* 169 F.3d at 751–52. "[A]n interpretation which gives a reasonable meaning to all parts will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous, or achieves a weird and whimsical result." *Arizona v. United States,* 216 Ct.Cl. 221, 235–36, 575 F.2d 855 (1978); *see also McAbee,* 97 F.3d at 1434.

Plaintiff's argument regarding the language of the settlement agreement and modification is two-fold. First, according to plaintiff, the settlement agreement is ambiguous because it contains the allegedly restricting phrases "for no other purpose" and "for no other."[28] Second, plaintiff maintains that the settlement agreement and modification should be limited to the defective pricing investigation because the term "claims" only encompasses claims which were certified and presented to the CO, or claims which were filed in a "tribunal." After careful review of the plain language of the settlement agreement and modification, the court concludes that the terms are not susceptible to more than one reasonable interpretation.

The court first addresses plaintiff's assertion that the phrases "for no other purpose" and "for no other" limit the scope of the settlement agreement to the defective pricing claim. The parties stipulated that the "agreement is for the purpose of settling all claims relating to the contract, irrespective of whether they are set forth in the pleadings in the above captioned action and for no other."[29] The parties dispute whether the phrase "for no other" modifies the term "purpose" or "contract."[30] Under either construction, a reasonable interpretation of the settlement agreement, as a whole, is that its purpose was to settle the defective pricing

---

27. FARNSWORTH, *supra,* § 7.3, at 218 (explaining that under the parol evidence rule "[t]here is no requirement that the writing be ambiguous in order for the evidence to be admitted.").

28. Pl.'s Mem. at 15.

29. Def.'s Ex.2002, ¶ 9.

30. Pl.'s Mem. at 14–15; Defendant's Post–Trial Brief at 13–14.

claim and "all claims relating to the contract, irrespective of whether they are set forth in the pleadings ...." [31] See *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1394 (Fed.Cir.1987) ("Exceptions to releases are strictly construed against the contractor."). Whether the phrase "for no other" modifies "purpose" or "contract" does not alter the plain meaning of this statement. Further, the opening and closing sentences of the settlement agreement are likewise not ambiguous. The sentences provide that the settlement agreement's purpose was to settle "this action without any further proceedings" and to settle "the matters discussed in this stipulation." As mentioned above, the resolution of "all claims relating to the contract" was a topic explicitly set forth in the settlement agreement. Apart from these enumerated purposes, the settlement agreement *then* could not be used for another purpose. The modification's unqualified discharge of "any and all claims" comports with this conclusion. An interpretation which limits the scope to only the defective pricing claim would also render the modification and paragraph 9 of the settlement agreement meaningless. See *Arizona*, 216 Ct.Cl. at 235, 575 F.2d 855. Therefore, the settlement agreement is not ambiguous in this regard.

■ Next, the court addresses plaintiff's argument that the term "claims" is ambiguous. The court, however, finds that the language is only susceptible to one reasonable interpretation. The plain meaning of a "claim" is "a demand for money or property to which one asserts a right ... [or a] cause of action." [32] As used in the context of set-tlement negotiations, the term "claims" cannot be strictly limited to plaintiff's interpretation. See *Metric Constructors*, 169 F.3d at 751–52. The language that precedes and follows "claims" in the settlement agreement and modification reinforces the court's conclusion. The court is unpersuaded that a reasonable interpretation of "settling *all* claims relating to the contract, *irrespective of whether they are set forth in the pleadings* " [33] and "full and final release and accord and satisfaction of *any and all* claims under this contract" [34] is limited in the manner that plaintiff suggests. Rather, a reasonable interpretation of said provisions leads to the conclusion that the settlement agreement and modification settled *all past, pending, and prospective* causes of actions, including claims which were or, in the future, may be certified and submitted to the CO, or filed in a "tribunal." [35] Without an ambiguity, plaintiff's extrinsic evidence is excluded and the parties' intent as evidenced by the plain language of the settlement agreement and modification must stand.[36]

Assuming *arguendo* that the court adopted plaintiff's interpretation of "claims," plaintiff's argument nevertheless fails. The releases would apply evenhandedly to plaintiff's characterization of the term "claims." The settlement agreement and the modification would still dispose of "all [certified and filed] claims relating to the contract, irrespective of whether they are set forth in the pleadings" [37] and "any and all [certified and filed] claims." [38] There is no temporal connotation to this language and plaintiff's attempt at the

31. Def.'s Ex.2002, ¶ 9.

32. BLACK'S LAW DICTIONARY 240 (7th ed.1999).

33. Def.'s Ex.2002, ¶ 9 (emphasis added).

34. Def.'s Ex.2006 (emphasis added).

35. Plaintiff contends that there were three outstanding issues at the conclusion of contract performance: (1) equitable adjustment, (2) wage determinations, and (3) defective pricing. Pl.'s Mem. at 2. There is no dispute that the wage determination issues were resolved prior to the settlement agreement. *Id.* at 5; Tr. at 142–43; Pl.'s Ex. 1041. At the time the settlement agreement and modification were being negotiated, apart from the defective pricing issue, only the equitable adjustment claim remained unresolved. Plaintiff contends, however, that the equitable adjustment claim was not a "claim." Under this interpretation, paragraph 9 of the settlement agreement would be superfluous because, according to plaintiff, there were no other outstanding "claims" to settle.

36. The court also cannot find an ambiguity in the attachment to Modification No. 21. Paragraph E clearly indicated that all aspects of the settlement agreement were incorporated into the modification.

37. Def.'s Ex.2002, ¶ 9.

38. Def.'s Ex.2006.

hearing to limit the settlement agreement and modification to only the defective pricing investigation was unpersuasive.[39] As mentioned above, the language of the settlement agreement and modification operated prospectively as well as retroactively. Therefore, without deciding whether plaintiff certified the claim and presented it to the CO, the court concludes that the settlement agreement and modification also acted as a release of plaintiff's equitable adjustment claim.

Plaintiff also contends that the parties did not discuss the equitable adjustment claim in the settlement negotiations and, therefore, the parties did not execute an effective accord and satisfaction of said claim. Plaintiff's argument is incorrect. A party's subjective intentions cannot override the plain and unambiguous language of an agreement. *Mingus Constructors*, 812 F.2d at 1394 (explaining that the burden is on the contractor to "carve out" any reservations); *Ryco Constr., Inc. v. United States*, 55 Fed.Cl. 184, 195 (2002) (citing *Zueblin*, 44 Fed.Cl. at 234); *Tri–O*, 28 Fed.Cl. at 471. Plaintiff had two opportunities to ensure that the terms of the settlement agreement and modification accurately and objectively reflected its intent. As was accomplished through the income tax reservation, plaintiff could also have bargained for a reservation excluding its equitable adjustment claim from the purview of the settlement agreement and modification. The settlement agreement provided that "[t]his stipulation is without regard to and shall not be construed as determining the amount of income taxes for which plaintiff is now liable or may become liable in the future as a result of this stipulation."[40] The settlement agreement could just as easily have contained a similar reservation of plaintiff's equitable adjustment claim. Further, plaintiff could have consulted with its counsel about the implications of such global language. Plaintiff could have objected or, as a last resort, walked

away from the settlement completely. Plaintiff, however, did none of these things. As memorialized, the settlement agreement and modification do not contain a specific reservation of a right to bring an equitable adjustment claim. Without a reservation, plaintiff explicitly discharged any and all unreserved rights under the contract. *C & H Commercial Contractors, Inc. v. United States*, 35 Fed.Cl. 246, 254 (1996); *Progressive Brothers Constr. Co., Inc. v. United States*, 16 Cl.Ct. 549, 552 (1989).[41]

While the court is sympathetic to plaintiff's predicament, it is inconceivable that plaintiff, or plaintiff's counsel, "failed to appreciate the significance of such language within the context of the circumstances surrounding the execution of such an agreement." *King Fisher Marine Serv., Inc. v. United States*, 16 Cl.Ct. 231, 237 (1989). Although the parties' negotiations did not mention the equitable adjustment claim, there was nothing ambiguous about the plain language of settlement agreement or modification. It was susceptible to only one reasonable interpretation. The court will not permit plaintiff's extrinsic evidence to create an ambiguity where none exists. *Interwest Constr.*, 29 F.3d at 615. The court would be "twisting" and "straining" the phrases "settle all claims relating to the contract, irrespective of whether they are set forth in the pleadings" and "any and all claims under this contract" to conclude that they were only limited to the defective pricing claim. *Hughes Aircraft Co. v. United States*, 15 Cl.Ct. 550, 553 (1988) ("[A] court should ascribe to contract language 'its ordinary and commonly accepted meaning,' without twisted or strained analysis." (citation omitted)). The court concludes that there was a meeting of the minds and that the parties, therefore, executed an effective accord and satisfaction of all causes of action

39. Tr. at 56–59; see also Pl.'s Mem. at 6.

40. Def.'s Ex.2002, ¶ 10.

41. The court is also perplexed by Mr. Foggy's decision not to inform his attorney about the equitable adjustment claim. Tr. at 106, 157–59. By taking this unusual course of action, Mr. Foggy for all practical purposes guaranteed that any subjective intentions he harbored concerning the equitable adjustment claim would not be conveyed by plaintiff's counsel. In other words, plaintiff's position could not have been made manifest because plaintiff's counsel could not be expected to advocate for an undisclosed position that may or may not have existed.

relating to the contract, including plaintiff's equitable adjustment claim.[42]

Lastly, the court must address the precedential impact of the United States Court of Appeals for the Federal Circuit's (Federal Circuit) decision in *Community Heating and Plumbing, Co., Inc. v. Kelso*, 987 F.2d 1575, 1581 (Fed.Cir.1993). The Federal Circuit held that the plaintiff's claims were not barred by an accord and satisfaction where the government "administered, reviewed, and negotiated [the plaintiff's] claims on its *merits* prior to and after execution of the subject contract . . . and waited two and one-half years to first raise the defense . . . ." *Id.* at 1581 n. 7 (emphasis added); see also *Westerhold*, 28 Fed.Cl. at 175 (denying the defense of accord and satisfaction where the contracting officer negotiated the claim after the modification was signed and failed to raise the defense in his denial of the claim one year later).

In this case, plaintiff sent a letter to the ACO referencing the equitable adjustment claim after the parties entered into the settlement agreement.[43] The ACO did not "review[ ], administer[ ], or negotiate[ ]" the merits of the equitable adjustment claim because she does not recall receiving the letter and was also well into retirement by the time the letter was sent.[44] In addition, there is no indication that any government personnel took any action in regard to plaintiff's letter that could fall within *Community Heating*. Plaintiff's letter, therefore, does not bar the defense of accord and satisfaction.

The CO's final decision likewise does not preclude the defense of accord and satisfaction.[45] Although plaintiff's equitable adjustment claim was denied without reference to the defense, the CO's conclusion based on laches never reached the merits of plaintiff's claim. *Fishman v. Schaffer*, 429 U.S. 1325, 1327, 97 S.Ct. 14, 50 L.Ed.2d 56 (1976); *Cornetta v. United States*, 851 F.2d 1372, 1386 (Fed.Cir.1988) (concurring opinion). In view of the aforementioned case law, the CO incorrectly indicated that the laches analysis considered the merits of plaintiff's claim.[46] This contradiction is amplified throughout the text of the final decision and it is apparent that the CO did not consider the merits of plaintiff's claim.[47] The CO was confronted with a lack of government documentation as well as lack of information from key government personnel. The CO's final decision was limited to the timeliness of the claim and the availability of credible information to properly address that claim. In view of the exceptional circumstances in this case, the CO did not "administer, review, or negotiate" the merits of plaintiff's claim. *Community*

---

42. Although plaintiff submitted a previous payment voucher marked "final," Pl.'s Ex. 1042, the court is not convinced that Modification No. 21 was not the final payment on the contract. The payment voucher dated January 31, 1990, was marked "final" and the language of Modification No. 21 indicated that it was intended to constitute "full and final release and accord and satisfaction." Def.'s Exs.2004, 2006. Further, the fact that Mr. Foggy did not receive any documentation closing out the contract and that Ms. Hilding did not personally close out the contract is of no significance. Pl.'s Mem. at 11. Ms. Hilding was retired at the time the parties executed Modification No. 21, and she testified that there were forms which were used by ACOs to close out the contract which did not require the contractor's signature. Tr. at 180–85, 188–89.

43. Pl.'s Ex. 1035.

44. Tr. at 180–85. Mr. Foggy's letter was dated March 9, 1990. Pl.'s Ex. 1035. The ACO testified that her retirement party, at which a number of plaintiff's managers were present, was held in March of 1988 and that she officially retired in May of that same year. Tr. at 184–86. The letter was, therefore, sent almost two years after the ACO had retired.

45. This reasoning is also applicable to Defendant's Motion To Dismiss, Or In The Alternative, For Summary Judgment, which was based on laches.

46. Def.'s Ex.2012, ¶ 5.

47. The CO explained that all contract files and documentation were destroyed in January 1996 pursuant to standard agency procedure and that any review was based on documents provided by plaintiff or its counsel. Def.'s Ex.2012, ¶¶ 3, 7. In addition, "all government personnel having knowledge of the administration or quality control of the contract [were] no longer government employees." *Id.* ¶ 7. The CO's final decision also stated that the ACO was unable to recall any details concerning the contract. *Id.* The CO concluded that "the government is seriously prejudiced in that it cannot determine W & F's entitlement to or quantum or relief on its claim." *Id.*

*Heating,* therefore, does not bar the defense of accord and satisfaction.

### Conclusion

For the above-stated reasons, the court holds that the parties executed an effective accord and satisfaction. The court also holds that the settlement agreement and modification operated as a release of plaintiff's equitable adjustment claim. Accordingly, plaintiff's complaint is hereby DISMISSED. No costs.

IT IS SO ORDERED.