BURDICK, Chief Justice.
Petitioner Brent Regan asserts that Idaho Code section 56-267, a statute enacted pursuant to the initiative power retained by the people of Idaho in Article III, section 1 of the Idaho Constitution, violates Idaho's Constitution by delegating future lawmaking authority regarding Medicaid expansion to the federal government. Regan requests that this Court declare section 56-267 unconstitutional and also requests that this Court issue a writ of mandamus directing the Secretary of State Lawerence Denney to remove section 56-267 from the Idaho Code. We dismiss *18 Regan's petition and deny his request for a writ of mandamus.
I. FACTUAL AND PROCEDURAL BACKGROUND
In the November 6, 2018 election, the Idaho electorate passed a ballot initiative, known as Proposition 2, to expand Medicaid eligibility in Idaho. On November 20, 2018, the Acting Governor issued a proclamation that Proposition 2 had passed, and subsequently the Idaho Code was amended to add section 56-267 which reads as follows:
56-267. MEDICAID ELIGIBILITY EXPANSION. (1) Notwithstanding any provision of law or federal waiver to the contrary, the state shall amend its state plan to expand Medicaid eligibility to include those persons under sixty-five (65) years of age whose modified adjusted gross income is one hundred thirty-three percent (133%) of the federal poverty level or below and who are not otherwise eligible for any other coverage under the state plan, in accordance with sections 1902(a)(10)(A)(i)(VIII) and 1902(e)(14) of the Social Security Act.
(2) No later than 90 days after approval of this act, the department shall submit any necessary state plan amendments to the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services to implement the provisions of this section. The department is required and authorized to take all actions necessary to implement the provisions of this section as soon as practicable.
A brief discussion of Medicaid history is helpful to understanding the genesis of Proposition 2. The Medicaid program was established in 1965 to provide medical care to indigent people as well as people " 'whose income and resources are insufficient to meet the costs of necessary medical services' including nursing home care." Stafford v. Idaho Dep't of Health & Welfare , 145 Idaho 530, 533-34, 181 P.3d 456, 459-60 (2008) (quoting Cleary v. Waldman , 167 F.3d 801, 805 (3rd Cir.1999) ).
The Medicaid program is administered by the states on a matching-fund basis, with the lion's share of support coming from the federal government. The states do not get the matching funds without strings. As one might suspect, the states must meet certain requirements in order to obtain the federal funds. Medicaid is a cooperative federal-state venture through with [sic] the states operate programs of their own design. These programs must, however, be consistent with federal standards and regulations.
Id. at 534, 181 P.3d at 460 (citation and quotation marks omitted).
When the Patient Protection and Affordable Care Act (ACA) was enacted by Congress in 2010, it contained a requirement that, in order to keep existing Medicaid funding, states had to expand Medicaid "to cover all individuals under the age of 65 with incomes below 133 percent of the federal poverty line." Nat'l Fed'n of Indep. Bus. v. Sebelius , 567 U.S. 519, 576, 132 S.Ct. 2566, 183 L.Ed.2d 450 (2012) (emphasis in original). This would have significantly changed Medicaid, as the existing "Medicaid program offer[ed] federal funding to States to assist pregnant women, children, needy families, the blind, the elderly, and the disabled in obtaining medical care." Id. at 519, 132 S.Ct. 2566 (citing 42 U.S.C. § 1396d(a) ). Idaho joined with twenty-five other states to challenge the mandatory provision. Id. at 520, 132 S.Ct. 2566. In its Sebelius decision, the U.S. Supreme Court held that the provision in the ACA that required states to expand Medicaid was unconstitutional, but held that states could voluntarily expand Medicaid. Id. at 587, 132 S.Ct. 2566. The ACA also created a system of insurance subsidies for individuals with household incomes of 100 percent to 400 percent of the federal poverty line, which was not affected by the Court's decision in Sebelius . Thus, after the U.S. Supreme Court's ruling in Sebelius struck down the mandatory Medicaid expansion in the ACA, there existed a "Medicaid gap" for people who did not qualify for existing Medicaid, but also did not have an income of at least 100% of the federal poverty level so as to qualify for insurance subsidies. People in the "gap" were left with no affordable healthcare options.
*19 Proposition 2, now Idaho Code section 56-267, expands Medicaid eligibility in Idaho to cover Idaho citizens who fall in the "Medicaid gap" by expanding coverage in Idaho to citizens who are under 65 years of age, whose modified adjusted gross income is 133% of the federal poverty level or below, and who are not otherwise eligible for Medicaid coverage under the existing state plan. Section 56-267 directs the Department of Health and Welfare (the Department) to submit the necessary amendments to the state Medicaid plan to the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services. I.C. § 56-267. Section 56-267 directs the Department to do this within 90 days after approval of the act. Id.
On November 21, 2018, after section 56-267 had become law, Petitioner Brent Regan filed a "Petition for Review" with this Court, seeking a declaration that section 56-267 is unconstitutional. Regan contends section 56-267 is unconstitutional because it delegates future lawmaking authority to the federal government. Regan's argument is centered on the portion of section 56-267 which extends Medicaid coverage "in accordance with sections 1902(a)(10)(A)(i)(VIII) and 1902(e)(14) of the Social Security Act." Regan contends that the federal government could change provisions in those sections of the Social Security Act, and that Idaho would be bound by such changes. Thus, Regan contends section 56-267 unconstitutionally delegates future lawmaking authority to the federal government.
II. STANDARD OF REVIEW
The Idaho Constitution and Idaho Code grant this Court original jurisdiction to issue writs of mandamus. Idaho Const. art. V, § 9 ; I.C. § 1-203. Under the Idaho Appellate Rules, "[a]ny person may apply to the Supreme Court for the issuance of any extraordinary writ or other proceeding over which the Supreme Court has original jurisdiction." I.A.R. 5(a). Such writs "may be issued ... to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station; or to compel the admission of a party to the use and the enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board or person." I.C. § 7-302.
Leavitt v. Craven , 154 Idaho 661, 665, 302 P.3d 1, 5 (2012).
"Because 'constitutional questions and questions of statutory interpretation are questions of law,' this Court exercises free review over both." Id. (quoting Stuart v. State , 149 Idaho 35, 40, 232 P.3d 813, 818 (2010) ). In cases challenging the constitutionality of a statute:
"There is a presumption in favor of the constitutionality of the challenged statute or regulation, and the burden of establishing that the statute or regulation is unconstitutional rests upon the challengers. An appellate court is obligated to seek an interpretation of a statute that upholds it [sic] constitutionality. The judicial power to declare legislative action unconstitutional should be exercised only in clear cases."
Id. (quoting Stuart , 149 Idaho at 40, 232 P.3d at 818 ).
III. ANALYSIS
A. Notwithstanding notable procedural deficiencies, this Court will consider Regan's petition.
Regan contends that this Court "is the proper forum for review" based on Idaho Code section 34-1809(4). Regan also argues this Court has jurisdiction over the matter because Regan is seeking an order to have Denney remove section 56-267 from the Idaho Code. Denney maintains that this Court lacks jurisdiction to consider the petition, and contends Idaho Code section 34-1809(4) cannot expand the Court's original jurisdiction set by the Constitution. Intervenors contend Regan lacks standing to bring his controversy before this Court. For reasons to be discussed, we will exercise our original jurisdiction under Article V, section 9 of the Idaho Constitution.
*20 1. Idaho Code section 34-1809(4) is unconstitutional and cannot create original jurisdiction in this Court.
Section 34-1809(4) provides that, "[a]ny qualified elector of the state of Idaho may, at any time after the attorney general has issued a certificate of review, bring an action in the [S]upreme [C]ourt to determine the constitutionality of any initiative." However, section 34-1809(4) unconstitutionally attempts to broaden this Court's jurisdiction. "The principle that neither the legislature nor the executive can in any way regulate or alter the Supreme Court's jurisdiction is basic to the doctrine of separation of powers." Mead v. Arnell , 117 Idaho 660, 663, 791 P.2d 410, 413 (1990) (citing Idaho Const. art. II, § 1 ). As this Court has said, "[t]he jurisdiction of this court is fixed by the Constitution and cannot be broadened or extended by the Legislature." Neil v. Pub. Utilities Comm'n of Idaho , 32 Idaho 44, 52, 178 P. 271, 273 (1919).
This Court has already determined that section 34-1809(4) cannot expand its jurisdiction in a 2003 Order regarding a petition to determine the constitutionality of Idaho Code sections 67-429B and 67-429C, enacted in Proposition 1, the Indian Gaming Initiative. In the 2003 Order, this Court determined section 34-1809(4) did not confer original jurisdiction to this Court, stating that the legislature had no power to extend this Court's original jurisdiction. The petitioners in that case cited to Article III, Section 1 of the Idaho Constitution contending that provision "authorizes the legislature to grant original jurisdiction to this Court in matters regarding initiatives." This Court rejected that argument and determined section 34-1809(4) did not confer original jurisdiction for the Court to decide the petition. Similarly, in Noh v. Cenarrusa , this Court stated that " Idaho Code § 34-1809 cannot compel the Court to decide a case that lacks a judiciable controversy." 137 Idaho 798, 803, 53 P.3d 1217, 1222 (2002). Justice Kidwell, concurring in the majority opinion, stated he would find section 34-1809(4) unconstitutional because it violates the separation of powers doctrine embodied in the Idaho Constitution. Id. He noted that the Legislature in passing the statute was attempting to instruct this Court to hear cases that were otherwise not justiciable. Id. at 804, 53 P.3d at 1223. We find Justice Kidwell's reasoning persuasive as to the issue before us.
Based on the above, we hold that Idaho Code section 34-1809(4) is unconstitutional, as it constitutes an attempt by the Legislature to broaden this Court's jurisdiction in contravention of the separation of powers doctrine in the Idaho Constitution. Idaho Const. art. II, § 1 ; Mead , 117 Idaho at 663, 791 P.2d at 413. Accordingly, section 34-1809(4) does not create jurisdiction for this Court to hear Regan's petition.
2. This Court will exercise original jurisdiction under Article V, section 9 of the Idaho Constitution.
This Court has "original jurisdiction to issue writs of mandamus, certiorari, prohibition, and habeas corpus, and all writs necessary or proper to the complete exercise of its appellate jurisdiction." Idaho Const. art. V, § 9. We have recognized that "this Court may 'exercise jurisdiction to review a petition for extraordinary relief where the petition alleges sufficient facts concerning a possible constitutional violation of an urgent nature.' " Coeur D'Alene Tribe v. Denney , 161 Idaho 508, 513-14, 387 P.3d 761, 766-67 (2015) (quoting Idaho Watersheds Project v. State Bd. of Land Comm'rs , 133 Idaho 55, 57, 982 P.2d 358, 360 (1999) ) (granting a writ of prohibition for a House Joint Resolution that proposed to amend the Idaho Constitution); see also Keenan v. Price , 68 Idaho 423, 429, 195 P.2d 662, 664 (1948) (accepting jurisdiction because of the "importance of the question[ ] presented" and the "urgent necessity for immediate determination"). Moreover, "this Court has repeatedly held that mandamus is not a writ of right and the allowance or refusal to issue a writ of mandate is discretionary." Coeur D'Alene Tribe , 161 Idaho at 512, 387 P.3d at 765. Thus, we recognize the discretionary nature of this exercise; it is not a prerogative that we exercise lightly, but one we reserve the right to exercise on a case by case basis when compelled by urgent necessity.
*21 Here, Regan alleges a constitutional violation, contending section 56-267 violates Article III, section 1 of the Idaho Constitution. Regan's challenge is of an urgent nature due to the 90-day time requirement in section 56-267 during which the Department must submit the necessary state plan amendments to the Center for Medicare and Medicaid Services. Additionally, we recognize the need for a determination of the constitutionality of section 56-267 during the 2019 legislative session given the fast-approaching 90-day window for the Department to submit any necessary plan amendments, and the Legislature's need to consider funding for Medicaid expansion. Accordingly, due to the urgency of the alleged constitutional violation and the urgent need for an immediate determination, we will exercise our original jurisdiction over Regan's petition.
3. While Regan cannot satisfy traditional standing requirements, we will relax the ordinary standing requirements and exercise jurisdiction over Regan's petition.
Even with the Court assuming jurisdiction to consider Regan's claims, he must still establish standing to pursue those claims. As we have said, "[c]oncepts of justiciability, including standing, identify appropriate or suitable occasions for adjudication by a court." CoeurD'Alene Tribe , 161 Idaho at 513, 387 P.3d at 766 (quoting State v. Philip Morris, Inc. , 158 Idaho 874, 881, 354 P.3d 187, 194 (2015) ). "[T]he origin of Idaho's standing is a self-imposed constraint adopted from federal practice, as there is no 'case or controversy' clause or an analogous provision in the Idaho Constitution as there is in the United States Constitution." Id. (citing U.S. Const. art. III. § 2, cl. 1 ). "In order to satisfy the requirement of standing, a party must allege or demonstrate an injury in fact and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury." Gibbons v. Cenarrusa , 140 Idaho 316, 318, 92 P.3d 1063, 1065 (2002) (citation and quotation marks omitted). However, generally, "a citizen and taxpayer may not challenge a governmental enactment where the injury is one suffered alike by all citizens and taxpayers of the jurisdiction." Noh , 137 Idaho at 800, 53 P.3d at 1219 (quoting Miles v. Idaho Power Co. , 116 Idaho 635, 641, 778 P.2d 757, 763 (1989) ).
However, in certain cases we will relax traditional standing requirements. In Coeur D'Alene Tribe , we relaxed the traditional standing requirements "where the petition allege[d] sufficient facts concerning a possible constitutional violation of an urgent nature." 161 Idaho at 513, 387 P.3d at 766 ; see also Keenan , 68 Idaho at 429, 195 P.2d at 664 (this Court accepted jurisdiction "because of the importance of the questions presented and the urgent necessity for immediate determination."). This Court also recognized the "willingness to relax ordinary standing requirements ... where: (1) the matter concerns a significant and distinct constitutional violation, and (2) no party could otherwise have standing to bring a claim." Coeur D'Alene Tribe , 161 Idaho at 514, 387 P.3d at 767 (citing Koch v. Canyon Cty. , 145 Idaho 158, 162, 177 P.3d 372, 376 (2008) ). We have stated that allegations "concern a significant and distinct constitutional violation" when a petitioner alleged violations in enacting laws and exercising veto power. Id.
Regan concedes he cannot satisfy the traditional standing requirements, but contends he has standing under Idaho Code section 34-1809(4). As determined above, section 34-1809(4) is unconstitutional and therefore cannot confer standing to Regan. However, even though Regan cannot demonstrate a distinct palpable injury sufficient to confer standing, due to the urgent nature of the alleged constitutional violations, we will relax the traditional standing requirements and consider Regan's petition. In so doing, we note the need for resolution of the constitutionality of this issue due to the 90-day requirement in section 56-267 for the Department to submit the necessary plan amendments, as well as the need for resolution during the 2019 legislative session.
B. Idaho Code section 56-267 is constitutional.
Regan contends that section 56-267"unconstitutionally delegates future lawmaking power to the United States Government and *22 agencies thereof." Specifically, Regan contends the portion of Section (1) of section 56-267 that reads "in accordance with sections 1902(a)(10)(A)(i)(VIII) and 1902(e)(14) of the Social Security Act" confers lawmaking authority to the federal government, thus rendering the statute unconstitutional. Regan argues that the federal government could change either the poverty level set out in 1902(a)(10)(A)(i)(VIII) or the income requirements in 1902(e)(14), and Idaho would be bound by such change under section 56-267. For reasons discussed below, Regan's arguments are without merit.
"A party arguing that a statute is unconstitutional has the 'burden of showing its invalidity and must overcome a strong presumption of validity.' " State v. Prather , 135 Idaho 770, 772, 25 P.3d 83, 85 (2001) (quoting Olsen v. J.A. Freeman Co. , 117 Idaho 706, 709, 791 P.2d 1285, 1288 (1990) ). "In reviewing the constitutionality of a statute, Idaho appellate courts are obligated to 'seek an interpretation of a statute that upholds its constitutionality.' " Id. (quoting State v. Cobb , 132 Idaho 195, 197, 969 P.2d 244, 246 (1998) ). "When the court finds that a statute is capable of two interpretations, one which would make it constitutional and the other unconstitutional, the court should adopt that construction which upholds the validity of the act." Id. (citing Cowles Pub. Co. v. Magistrate Court , 118 Idaho 753, 759, 800 P.2d 640, 646 (1990) ).
Article 3, section 1 of the Idaho Constitution provides that, "[t]he legislative power of the state shall be vested in a senate and house of representatives." Idaho Const. art. III, § 1. "[I]t is well established that the legislature cannot delegate any of its power to make laws to any other body or authority[.]" Kerner v. Johnson , 99 Idaho 433, 450, 583 P.2d 360, 377 (1978). The Idaho Constitution also provides that "[t]he people reserve to themselves the power to propose laws, and enact the same at the polls independent of the legislature." Idaho Const. art. III, § 1. Thus, voter "[i]nitiatives and laws passed by the legislature are on equal footing" and "once a law is enacted in the initiative process it is like any other law." Gibbons , 140 Idaho at 320, 92 P.3d at 1067.
This Court has previously addressed the situation present here; that is, the effect of a statute referencing or incorporating another statute. In Nampa & Meridian Irrigation District v. Barker ,[1] an irrigation district had a duty to collect a penalty for non-payment of its assessments; however, the district was not sure what the proper measure of the penalty was. 38 Idaho 529, 223 P. 529 (1924). The issue was whether the penalty was 10% or 6% of the delinquent taxes. Id. at 531, 223 P. at 530. When the statute governing the irrigation penalty was enacted by the legislature, delinquent state and county taxes were subject to a rate of 10%. Id. Later, the general law was changed to where delinquent state and county taxes were subject to a rate of 6%. Id. Thus, the issue was whether the irrigation penalty statute intended to adopt the rate in place at the time the irrigation statute was adopted (10%), or whether the irrigation penalty statute intended to adopt the general law governing the rate for delinquent state and county taxes as it may exist from time to time, and which had changed to 6%. Id.
This Court explained there are two alternative approaches when a statute adopts or references another statute. First, this Court stated:
Where one statute adopts the particular provisions of another by a specific and descriptive reference to the statute or provisions adopted, the effect is the same as though the statute or provisions adopted had been incorporated bodily into the adopting statute. When so adopted, only such portion is in force as relates to the particular subject of the adopting act, and as is applicable and appropriate thereto. Such adoption takes the statute as it exists at the time of adoption and does not include subsequent additions or modifications of the statute so taken unless it does so by express intent.
*23 Id. at 533, 223 P. at 530 (citations and quotation marks omitted). Alternatively, this Court stated there is "another form of adoption" where a reference in a statute is "not to any particular statute or part of a statute," but rather "the law generally which governs a particular subject." Id. "The reference in such case means the law as it exists from time to time or at the time the exigency arises to which the law is to be applied." Id. The Court held that the irrigation penalty statute fell within the second class mentioned as it did "not refer to any specific act or section" but rather to "the law generally governing the penalties for delinquent state and county taxes." Id. at 533-34, 223 P. at 531. Thus, this Court held the delinquent irrigation penalty was subject to the 6% rate as was in place at the time, rather than the previous 10% rate. Id. at 534, 223 P. at 531.
Similarly, this Court in Brannon v. City of Coeur d'Alene dealt with a situation where a statute referenced a second statute that was later repealed. 153 Idaho 843, 292 P.3d 234 (2012). There, an unsuccessful candidate for city council contested the election after he lost by five votes. Id. at 845, 292 P.3d at 236. One of the issues on appeal was the district court's ruling that five votes were legally cast under the Uniformed and Overseas Citizens Absent Voting Act (UOCAVA). Id. at 848, 292 P.3d at 239. The Idaho statute governing municipal elections for members of the armed forces referenced the Federal Voting Assistance Act (FVAA) of 1955. Id. at 849, 292 P.3d at 240. Later, the UOCAVA repealed and replaced the FVAA in terms of absentee voting, and thus the issue before the Court was whether the FVAA or UOCAVA applied to municipal elections in Idaho. Id. In holding the FVAA, and not UOCAVA applied, the Court said the "FVAA 1955 provisions pertaining to persons in the United States service continued in force. The 1986 repeal of FVAA had no impact on the operation of FVAA's absentee voting provisions in the context of" the Idaho voting statute. Id. at 850, 292 P.3d at 241. In so holding, this Court quoted Barker : "[s]uch adoption takes the statute as it exists at the time of adoption and does not include subsequent additions or modifications of the statute so taken unless it does so by express intent." Id. at 849, 292 P.3d at 240 (quoting Barker , 38 Idaho at 533, 223 P. at 530 ). The Court also quoted the Fourth Circuit Court of Appeals:
Where a reference statute incorporates the terms of one statute into the provisions of another act, the two statutes coexist as separate distinct legislative enactments, each having its appointed sphere of action. ... Accordingly, [a]s neither statute depends upon the other's enactment for its existence, the repeal of the provision in one enactment does not affect its operation in the other statute.
Id. at 850, 292 P.3d at 241 (quoting United States v. Myers , 553 F.3d 328, 331 (4th Cir. 2009) ).
In this case, section 56-267 specifically references the Social Security Act and two provisions within that act. It is unlike the statute in Barker that did not reference any specific act or section, and rather only generally referenced law governing penalties for delinquent state and county taxes. Therefore, because of section 56-267 's specific reference, "[s]uch adoption takes the statute as it exists at the time of adoption and does not include subsequent additions or modifications of the statute so taken unless it does so by express intent." Barker , 38 Idaho at 533, 223 P. at 533. Similarly, applying Brannon here further demonstrates section 56-267 has not delegated any lawmaking authority to the federal government. The Court in Brannon affirmed the idea that when a statute references a second statute, it adopts that statute as it is in its current form. Subsequent amendment or repeal does not affect the initial statute.
Despite Barker and Brannon , Regan relies heavily on Idaho Savings & Loan Association v. Roden , 82 Idaho 128, 134, 350 P.2d 225, 228 (1960) to support his position. In Roden , this Court held that certain provisions within Title 30, chapter 13 of the Idaho Code were unconstitutional. Id. at 135, 350 P.2d at 229. In that case, a statute required that "Idaho savings and loan associations insure their accounts with the Federal Savings and Loan Insurance Corporation as a condition precedent to doing business in the State of Idaho, or to the continuation of doing business in the State of Idaho."
*24 Id. at 133, 350 P.2d at 227-28. Four sections of the statute were determined to be unconstitutional because they delegated authority to an agency of the U.S. Government. Id. at 134, 350 P.2d at 228. This Court stated that the sections at issue
required [Idaho savings and loan associations] to abide by and conform with rules and regulations of the Federal Home Loan Bank Board adopted after enactment of the Idaho legislation, and to abide by and conform with any amendment to Title 4 of the Housing Act relating to insurance of accounts which may become effective after the date of the Idaho act.
Id. One section at issue, section 30-1301A, stated in pertinent part that every corporation formed under Chapter 13, Title 30 Idaho Code "must have at all times a minimum capital represented by ... or paid in cash sufficient to qualify such corporation for insurance of accounts by the Federal Savings and Loan Insurance Corporation, as provided by Title IV of the National Housing act, as may be amended from time to time ." H.B. 196, S.L. 1957, ch. 239, § 3 (emphasis added). Another section, 30-1301H, required that a corporation file "evidence that the corporation has complied with or meets all of the qualifications for compliance with the requirements of the Federal Savings and Loan Insurance Corporation Act and the Home Loan Bank Board for insurance of accounts[.]" H.B. 196, S.L. 1957, ch. 239, § 3.
This Court stated "the question to be resolved is whether or not the Legislature of the State of Idaho, contrary to the Idaho Constitution, Article 3, section 1, unlawfully delegated its authority to the federal government and an agency thereof." Roden , 82 Idaho at 134, 350 P.2d at 228. This Court did not undertake a lengthy review of the trial court's determination that the sections were unconstitutional because the plaintiff agreed the sections were unconstitutional and was challenging only whether the delegation was severable. Id. Thus, this Court focused primarily on whether the unconstitutional provisions were severable, stating "[i]n dealing with the problem as to whether the unconstitutional provisions are severable, we must look to the effect upon the legislation of the deletion of these provisions." Id. at 135, 350 P.2d at 229. As we stated,
[u]nder the decision of the trial court, the plaintiff is not required to observe future rules and regulations of the Board nor future amendments of the National Housing Act. But an agreement to observe and be bound by future amendments to the National Housing Act and future rules and regulations of the Board is exacted as a condition to granting the insurance, and also to continuing it in force. Hence, appellant can neither obtain the insurance nor continue it in force without being compelled to abide by the unconstitutional provisions of the Idaho act. Thus, it is demonstrated that the unconstitutional provisions delegating to the Congress and the Home Loan Bank Board the legislative power and function to make future laws and regulations governing appellant's business and its right to remain in business, are not severable from the provisions requiring appellant to obtain insurance of accounts by the Federal Savings and Loan Insurance Corporation. The provisions requiring such insurance are therefore unconstitutional and void.
Id.
In this case, contrary to Regan's assertion, a comparison cannot be drawn from Roden , as section 56-267 is distinguishable from the statute at issue in Roden . In Roden , the unconstitutional statute required Idaho savings and loan associations to conform to the rules and regulations of the Federal Home Loan Bank Board. Id. at 134, 350 P.2d at 228. And, one of the offending sections expressly authorized future unknown amendments with which Idaho savings and loan associations would have to comply. H.B. 196, S.L. 1957, ch. 239, § 3 (emphasis added). As this Court stated, the sections required savings and loan associations to "abide by and conform with any amendment to Title 4 of the Housing Act relating to insurance of accounts which may become effective after the date of the Idaho act." Roden , 82 Idaho at 134, 350 P.2d at 228. There is no such provision in section 56-267. While section 56-267 states that it is "in accordance with" two sections of the Social Security Act, section 56-267 delineates with *25 specificity who is covered by the Medicaid expansion. Section 56-267 does not state that compliance is required with future amendments to the federal statute like the statute did in Roden . Because of section 56-267 's explicit reference to a specific provision of the Social Security Act, "[s]uch adoption takes the statute as it exists at the time of adoption and does not include subsequent additions or modifications of the statute so taken" as there is no "express intent" indicating it had to do so. Barker , 38 Idaho at 533, 223 P. at 533.
Regan argues that because section 56-267 is "in accordance with" Sections 1902(a)(10)(A)(i)(VII) and 1902(e)(14) of the Social Security Act, the federal government could change the income requirements or increase the poverty line from 133% to 153% and Idaho would have to cover the additional people who would be eligible for Medicaid. This argument is without merit. As discussed in Barker and Brannon , section 56-267 's specific reference to the federal statute indicates section 56-267 is adopting the federal statute as it exists at the time section 56-267 was executed as there is no express intent to the contrary. Barker , 38 Idaho at 533, 223 P. at 533; Brannon , 153 Idaho at 850, 292 P.3d at 241. This is unlike Roden where the statute contemplated future amendments to the federal statute "from time to time." There is no such contemplation in section 56-267. Moreover, section 56-267 specifically delineates who is eligible for Medicaid under the expansion. It defines the eligible population as "persons under sixty-five (65) years of age whose modified adjusted gross income is one hundred thirty-three percent (133%) of the federal poverty level or below and who are not otherwise eligible for any other coverage under the state plan, in accordance with sections 1902(a)(10)(A)(i)(VIII) and 1902(e)(14) of the Social Security Act." If, as Regan contends, the federal government were to amend section 1902(a)(10)(A)(i)(VIII) to cover those up to 153% of the poverty level, it would not mean that Idaho automatically has to cover additional Idaho citizens. Rather, because Medicaid is a cooperative federal-state program, if Idaho wanted to continue offering expanded Medicaid services, the Idaho legislature would have to decide to pass new legislation conforming with the amendment. See Stafford v. Idaho Dep't of Health & Welfare , 145 Idaho 530, 534, 181 P.3d 456, 460 (2008) ; see also Attorney General Opinion 89-3 , Jim Jones (Feb. 8, 1989).
Moreover, to the extent the holding of Roden could have suggested it was an unconstitutional delegation of lawmaking authority when a statute references federal law, that holding was called into doubt in State v. Kellogg , 98 Idaho 541, 543, 568 P.2d 514, 515 (1977). There, the statute governing who could sell prescription drugs did "not specify which drugs shall require a prescription order, but instead conditions that status upon three possible alternatives: (1) another state law, (2) a law of the United States, or (3) a rule or regulation of the Idaho Board of Pharmacy." Id. at 542, 568 P.2d at 515. Because there was no other state law defining prescription drugs, and because the Board of Pharmacy deferred to federal law to define which drugs require a prescription, this Court stated "the only method by which a drug may become a prescription drug in Idaho is by the operation of federal law" Id. at 543, 568 P.2d at 516.
The lower court held the statute was an unconstitutional delegation of legislative authority. Id. at 542, 568 P.2d at 515. This Court reversed the lower court's holding stating, "[a]lthough the legislature cannot delegate its power to make a law or complete one, it can empower an agency or an official to ascertain the existence of the facts or conditions mentioned in the act upon which the law becomes operative." Id. at 543, 568 P.2d at 516 (citation omitted). In noting that the area of drug regulation demanded particular practical considerations, this Court said, "[i]n deciding whether a delegation is proper the court's evaluation must be 'tempered by due consideration for the practical context of the problem sought to be remedied, or the policy sought to be effected.' " Id. (quoting Dept. of Citrus v. Griffin , 239 So.2d 577 (Fla. 1970) ).
It should be noted that section 56-267 is not the first nor is it the only statute to reference federal law. In fact, many Idaho *26 statutes reference federal law. For example, Idaho Code section 33-2202 provides that:
The state board of education is hereby designated as the state board for career technical education for the purpose of carrying into effect the provisions of the federal act known as the Smith-Hughes act, amendments thereto , and any subsequent acts now or in the future enacted by the congress affecting vocational education, ....
(emphases added); see also Idaho Code section 33-2902 ("the assent of the legislature of the state of Idaho is hereby given to [the Hatch act] ... and the acts amendatory thereof and supplementary thereto."); Idaho Code section 74-104(1) ("The following records are exempt from disclosure: ... any public record exempt from disclosure by federal or state law or federal regulations ...."). In fact, Idaho's existing Medicaid statute, even prior to expansion, incorporates federal law to determine eligibility. See I.C. § 56-254 (referencing the federal poverty guideline and various sections of the Social Security Act to determine Medicaid eligibility). Regan has not challenged the existing statute even though the existing Medicaid statute references various sections of the Social Security Act to determine eligibility. It is unclear why Regan contends the Medicaid expansion statute is unconstitutional but does not challenge the existing Medicaid statute, when both reference the Social Security Act. If we were to accept Regan's argument that any reference to a federal statute delegates lawmaking authority to the federal government, then many of Idaho's statutes would be unconstitutional, and in fact, the option of any cooperative federal-state program would be curtailed.
Regan also argues that section 56-267 gives the Department "uncontrolled, unrestricted and unguided discretionary power that exceeds constitutional limits." However, section 56-267 does not leave the Medicaid eligibility determination to the Department; rather, the statute states the three criteria that must be present in order for an individual to qualify for Medicaid after the expansion. I.C. § 56-267. This delegation is consistent with that approved of in Kellogg . Moreover, this delegation is consistent with the statutory duty granted to the Director of the Department which states in part that the Director shall "[p]romulgate, adopt and enforce such rules and such methods of administration as may be necessary or proper to carry out the provisions of title 56, Idaho Code ...." I.C. § 56-202. Thus, Regan's argument that the statute delegates uncontrolled power to the Department is unpersuasive.
Regan next argues that the federal government currently pays 90% of the costs associated with the expansion of Idaho Medicaid, but that the federal government could lower the amount of the federal contribution in the future. Regan provides almost no citation or authority for this argument, and instead focuses on the "sunset clause" that was in an earlier draft of section 56-267 but removed prior to its passage. The "sunset clause" would have caused the expansion to become void if federal funding were to fall below 90%. The sunset clause is not present in section 56-267, so Regan is essentially arguing its absence delegates lawmaking authority to the federal government. Thus, Regan contends, "[t]he federal government can exercise its lawmaking power and change this 90% to 71% without Idaho ever exercising any of its lawmaking power found in Article III of the Idaho Constitution." This argument is without merit.
Idaho's ongoing participation in Medicaid, even prior to expansion, requires a yearly appropriation of funds from the legislature. As provided in Article VII, Section 13 of the Idaho Constitution, "[n]o money shall be drawn from the treasury, but in pursuance of appropriations made by law." Each year, the legislature appropriates funding for Medicaid, which is passed by the House and Senate, and signed by the Governor. See H.B. 695 (2018); S.B. 1376 (2018). Thus, the Idaho legislature will control the ongoing nature of Medicaid through its annual appropriation of funds. Additionally, as the United States Supreme Court has said, "[t]hough Congress' power to legislate under the spending power is broad, it does not include surprising participating States with post-acceptance or 'retroactive' conditions."
*27 Nat'l Fed'n of Indep. Bus. v. Sebelius , 567 U.S. 519, 584, 132 S.Ct. 2566, 183 L.Ed.2d 450 (2012) (citation omitted). The Court noted Congress cannot penalize states that choose not to expand Medicaid by taking away the state's existing Medicaid funding. Id. at 585, 132 S.Ct. 2566. Thus, should the federal government ever lower its contribution for expanded coverage, the federal government could not take away Idaho's existing Medicaid funding, should Idaho return to its coverage system prior to expansion. Accordingly, Regan's contention that the federal government can control Idaho's expenditure of funds is unpersuasive.
Lastly, Regan contends that if section 56-267 had stated "in accordance with sections 1902(a)(10)(A)(i)(VIII) and 1902(e)(14) of the Social Security Act as currently codified " then it would be constitutional because the legislature could annually revisit and adopt it. However, section 56-267 did not need to state "as currently codified" to be constitutional. By its specific reference to the Social Security Act and sections therein, section 56-267 adopted the federal statute as it is currently codified. See Barker , 38 Idaho at 533, 223 P. at 533; Brannon , 153 Idaho at 850, 292 P.3d at 241. Additionally, as discussed, Idaho's Medicaid program only continues to operate each year if the legislature appropriates the necessary funding for the program. Idaho Const. art. VII, § 13. Thus, the legislature does revisit the Medicaid statute annually and appropriates funds as it deems appropriate. Regan's argument that the statute needed to say "as currently codified" in order to be constitutional is without merit.
In sum, once a ballot initiative is passed and is law, it is treated the same as if the legislature had passed it. Gibbons , 140 Idaho at 320, 92 P.3d at 1067. Because Regan is arguing the statute is unconstitutional, he "has the 'burden of showing its invalidity and must overcome a strong presumption of validity.' " Prather , 135 Idaho at 772, 25 P.3d at 85 (quoting Olsen , 117 Idaho at 709, 791 P.2d at 1288 ). And, "an appellate court is obligated to seek an interpretation of a statute that upholds its constitutionality." Id. (quoting Cobb , 132 Idaho at 197, 969 P.2d at 246 ). Here, section 56-267 is constitutional and it does not delegate lawmaking authority to the federal government. Regan's petition is dismissed and his request for a writ of mandamus is denied.
C. We do not award attorney fees on appeal.
Based on the above, Regan is not the prevailing party. The Intervenors do not request attorney fees. Denney requests attorney fees pursuant to Idaho Code section 12-121 and contends Regan's petition was frivolous, unreasonable, or without foundation. We decline to award attorney fees on appeal.
Pursuant to section 12-121, this Court, in any civil action, may award reasonable attorney fees to the prevailing party. I.C. § 12-121 ; Doe v. Doe (2016-7) , 161 Idaho 67, 79, 383 P.3d 1237, 1249 (2016). "This Court has held that attorney fees can be awarded on appeal under Idaho Code section 12-121 'only if the appeal was brought or defended frivolously, unreasonably, or without foundation.' " Doe (2016-7) , 161 Idaho at 79, 383 P.3d at 1249 (citation omitted). However, "[f]ees will generally not be awarded for arguments that are based on a good faith legal argument." Easterling v. Kendall , 159 Idaho 902, 918, 367 P.3d 1214, 1230 (2016).
In this case, though we have determined section 34-1809(4) to be unconstitutional, we note that Regan was not unreasonable in relying on such provision in bringing his petition before this Court. Because Regan relied on section 34-1809(4) to seek review from this Court, we decline to award attorney fees on appeal pursuant to section 12-121.
IV. CONCLUSION
Section 56-267 is constitutional. Regan's petition is dismissed and his request for a writ of mandamus denied. No attorney fees are awarded on appeal. Costs as a matter of right to Intervenors and Denney.
Justice BEVAN concurs.

Though Regan contended at oral argument that he was ambushed when Denney filed supplemental authority that included Barker and Brannon , the supplemental authority was validly filed pursuant to Idaho Appellate Rule 34(f)(1) and Regan received notice of the filing.