**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 52514**

| | |
|---|---|
| GEORGE CROOKHAM, an individual; CROOKHAM COMPANY, an Idaho corporation; JOHN HOADLEY, an individual; and RON AMAREL, an individual, | ) ) ) ) ) ) ) |
| Petitioners-Appellants, | ) ) |
| v. | ) ) ) |
| COUNTY OF CANYON and CANYON COUNTY BOARD OF COMMISSIONERS, a political subdivision of the State of Idaho, | ) ) ) ) |
| Respondents. | ) ) ) |

**Boise, November 2025 Term**

**Opinion filed: January 16, 2026**

**Melanie Gagnepain, Clerk**

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Brent L. Whiting, District Judge.

The district court's order denying the petition for review is <u>reversed</u> and <u>remanded</u>.

Sawtooth Law Offices, PLLC, Boise, for Appellants. David P. Claiborne, argued.

Chris Boyd, Canyon County Prosecuting Attorney, Caldwell, for Respondents. Laura K. Keys, argued.

_____

BRODY, Justice.

This appeal arises from the district court's denial of a petition for review of a conditional rezoning approval based on its conclusion that Petitioners lack standing. It requires this Court to clarify which standing inquiry governs a petition for review brought under the Local Land Use Planning Act (LLUPA): the traditional three-part test this Court derived from federal law, or LLUPA's "affected person" standard.

The Judith A. Gross Trust and Douglas Gross applied to Canyon County to rezone 145 acres of farmland they own for "light industrial" use (the "Gross rezoning"). The Canyon County Development Services Department and its Planning and Zoning Commission recommended that the Canyon County Board of County Commissioners approve the rezoning, which it ultimately

1

did, subject to a number of conditions. Petitioners, three Canyon County businessmen and one of their agricultural businesses, moved the Board to reconsider its approval of the Gross rezoning, but the Board declined. Petitioners then sought judicial review of the Board's approval in district court under LLUPA. They argued that rezoning the Gross property for light industrial use would harm their agribusiness interests by reducing available farmland, impairing "crop isolation" that is important for seed crops, and indirectly depriving them of customers. The district court dismissed the petition, ruling that Petitioners lacked "constitutional" standing. Specifically, the court ruled that Petitioners failed to allege a concrete, particularized injury attributable to the rezoning and that any such injury would not be redressable by judicial decision. The district court declined to consider whether Petitioners satisfied LLUPA's "affected person" standard, treating the Petitioners' failure to satisfy the traditional three-part standing inquiry as dispositive. This appeal followed.

On appeal, Petitioners argue that the district court erred by declining to evaluate their standing under LLUPA's "affected person" standard. They also contend that, even under the traditional three-part test articulated in *Citizens Against Linscott/Interstate Asphalt Plant v. Bonner County Board of Commissioners*, 168 Idaho 705, 486 P.3d 515 (2021), the district court erred in concluding that their alleged injuries were too speculative. They maintain that their allegations sufficiently establish standing, even if those allegations do not yet demonstrate "the exact or actual impact of the injury that will be suffered."

We hold that the applicable standing inquiry for a petition for review brought under LLUPA is LLUPA's "affected person" standard. *See* I.C. § 67-6521. In so holding, we make explicit that this Court's standing doctrine is a "self-imposed constraint," not a constitutional one, and it is therefore subject to displacement by the legislatively enacted "affected person" standard articulated in LLUPA. Because the district court failed to consider Petitioners' allegations under the LLUPA standard, we reverse its denial of the petition for review and remand for the court to consider whether Petitioners qualify as "affected persons" and, therefore, have standing to challenge the Board's approval of the rezoning.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Gross property is a 145-acre parcel situated between Wilder and Greenleaf in Canyon County, Idaho. For zoning purposes, the property is divided into two discrete parcels: The first parcel is zoned for both light industrial and agricultural use. The second parcel is zoned exclusively

for agricultural use. The surrounding area is zoned primarily for agricultural use, save for a few neighboring parcels zoned for light industrial use.

In September 2022, the Grosses applied to the Board for a conditional rezoning of all 145 acres for light industrial use. The Grosses described these parcels as "the poorest quality of land on [their] farms" and better suited to light industrial use. Once the rezoning was completed, the Grosses intended to "market the parcels for the development of agricultural processing or compatible light industrial business." In fact, at the time of the rezoning proceedings, the property was already listed for sale. In subsequent email correspondence with the County, the property owners explained that their "vision" for the property included potential use for warehousing; wholesaling; distribution facilities; logistics; trucking; moving and storage; landscaping; nursery; nursery retail; manufacturing; assembling; fabricating; processing; packing; repairing; or storage. Furthermore, the property owners clarified that they wanted to "limit" the following uses: animal cremation service; animal facility (large); bird farm, calf raising operation, dairy, feedlot, and swine farm; animal facility (small) on five acres or more; animal facility (small) on less than five acres; animal hospital; arena (commercial); batch plants; impound yard; kennel; mineral extraction (long term); mineral extraction (short term); mortuaries, cremations, and funeral home; rehabilitation of manufactured/mobile homes; and sale of salvage goods. There does not appear to be any dispute that the fourteen potential uses the property owners embraced are among the Canyon County Code's fifty-eight allowable uses for real property zoned as "light industrial."

The County's Development Services Department determined that it could not assess the required services or impact on existing infrastructure without more specific use proposals from the Grosses. However, it observed that the rezoning aligned with six goals set forth in the 2020 Canyon County Comprehensive Plan and that "[t]he City of Greenleaf and City of Wilder also designate the area for commercial and industrial uses in their Comprehensive Plans." The Department recommended approval of the rezoning and forwarded its proposed findings of fact and conclusions of law along with a draft development agreement to a Canyon County Planning and Zoning Commission hearing examiner.

The hearing examiner held a hearing in April 2023 to consider the Grosses' application. The hearing examiner found that the proposed findings of fact, conclusions of law and order adequately addressed the concerns expressed with the Grosses' rezoning application. He modified the development agreement to clarify that mitigation measures based on an analysis of the relevant

local government entities had to be in place prior to commencement of any light industrial use. Moreover, the hearing examiner removed "Rendering Plant" as a possible use and recommended that certain provisions of the Idaho Right to Farm Act be implemented. With those changes, the hearing examiner recommended approval of the rezoning application and forwarded his recommendation to the Board.

The Board held a hearing on the Grosses' application in August 2023. It first heard testimony in support of the application from Doug Gross and the Gross family's realtor, who described the family's general desire to rezone the entire property for light industrial use and Mr. Gross's intention to "have a hand in" the area's rapidly evolving economy and land uses. The Board then heard from Ron Amarel and John Hoadley—two of the three Petitioners in the present appeal—who objected to the rezoning on the grounds that it would convert arable agricultural land to industrial uses. The Board then proceeded to deliberation.

The Board voted unanimously to approve the conditional rezoning of the Gross property for light industrial use, subject to the conditions set forth in the development agreement and an additional restriction prohibiting use of the property as a "mini storage facility." Fourteen days later, John Hoadley and Ron Amarel, joined by fellow Canyon County resident George Crookham, moved the Board to reconsider its approval of the Gross application. The Board denied their motion for reconsideration, and Hoadley, Amarel, and Crookham subsequently sought judicial review.

In their petition for review, Petitioners generally alleged that each is a resident of Canyon County who "participated in the administrative proceedings for which review is sought by this action," and who "own[s], lease[s] or otherwise control[s] real property interests in Canyon County whereupon agricultural operations are conducted." They further asserted that they are "affected persons having a bona fide interest in property which is, or may be, adversely affected by the approval of the Zoning Decision." Petitioners claimed that "Canyon County's Zoning Decision is in error, not in accord with the law, arbitrary, capricious, unreasonable, and otherwise illegal." Specifically, they maintained that the Board's approval of the Gross application was (1) "contrary to the text and spirit of Canyon County's comprehensive plan"; (2) "contrary to the text and spirit of Canyon County's zoning ordinance"; (3) "inconsistent with the zoning purpose for the subject land, and further constitutes diminishing agricultural land and uses"; (4) "inconsistent and incompatible with surrounding land uses"; (5) failed to account for "agricultural lands, services

and uses in the area"; and (6) the product of proceedings that "were irregular, not in accord with the law of LLUPA, and materially and substantively deficient."

The district court noted that the Board "raised the issue of standing in its opposition to the Petition." Accordingly, the court's opinion focused entirely on whether Petitioners had what it called "constitutional" standing to challenge the Board's approval of the Gross application. Petitioners maintained that they had "standing pursuant to LLUPA, and [that] they need not meet the more stringent constitutional standard advanced by [the Board]." In response to the Board's standing argument, Petitioners offered: (1) an affidavit of George Crookham, (2) a declaration of Ron Amarel, and (3) a declaration of John Hoadley. These documents described Petitioners' alleged injuries in greater detail.

Crookham's affidavit states that he is the chief executive officer and majority shareholder of Crookham Company, a commercial seed growing and processing operation based in Canyon County. The company engages in bailment contracts with local farmers and also farms its own lands within the county. In an attachment, Crookham identifies numerous locations near the Gross property where Crookham Company has "entered, or continue[s] to enter, numerous contracts to raise seed with farmers . . . ." Crookham further avers that Canyon County is among the world's premier seed-crop-raising regions due to its capacity for agricultural "isolation." He explains that "[d]evelopment in Canyon County diminishes the ability to isolate seed crops by reducing the number of fields, reducing the areas where isolation is possible, and concentrating seed growth in undeveloped or lesser developed areas where isolation can still be achieved." According to Crookham, the rezoning of the Gross property "adversely impacts [the Company's] ability to contract for and grow commercial seed, resulting in financial harm and loss of income" due to the loss of "agricultural land where isolation can be achieved." At the same time, he acknowledges that "[s]ince the Gross . . . application . . . does not identify the proposed 'light industrial' use of the Gross property, it is impossible to evaluate potential conflicts with agricultural operations . . . ."

Amarel's declaration states that he is the owner and operator of a consulting firm based in Canyon County with expertise in "vegetable seed production, rice, soil amendment, software, and other specialized solutions for agricultural production." Among Amarel's clients are "agricultural producers in the area of the Gross conditional rezone . . . ." Amarel avers that "[i]ndustrial

5

development of the Gross property will likely lead to additional development of neighboring agricultural land in the area, further reducing the market for [his] consulting services."

Similarly, Hoadley's declaration states that he is the vice president of Summit Seed Coatings, LLC, a company based in Canyon County. The firm "develop[s] and produce[s] seed coatings which enhance seed productivity and yield" and counts among its customers alfalfa producers who operate "in and around the area of the proposed conditional rezone . . . of the Gross property . . . ." Hoadley avers that rezoning the Gross property will accelerate the departure of his customers from Canyon County to other states and countries. That, in turn, is likely to increase "Summit's cost of doing business to interact with and deliver seed coatings to our customers and may result in loss of business to competitors that are located closer to relocated seed production operations." However, Hoadley acknowledges that "since the Gross [application] does not identify the proposed 'light industrial' use of the Gross property, it is impossible to evaluate the nature, extent and range of potential conflicts . . . ."

The district court concluded that Petitioners lacked standing because they failed "to sufficiently plea [sic] an injury in fact." The court rejected Petitioners' contention that the standing inquiry turns solely on LLUPA's "affected person" standard. Instead, it reasoned that a petitioner challenging a land-use decision must demonstrate both "constitutional" standing to sue and status as an "affected person" under LLUPA, I.C. § 67-6521.

The district court concluded that the alleged injuries described in the petition, affidavit, and declarations were "speculative at best." The court observed that none of the Petitioners alleged a current business relationship with the Gross property, nor did they claim that any specific business had been or would be lost as a result of the rezoning. The court acknowledged that some of the speculative nature of Petitioners' allegations stemmed from the lack of specificity in the Gross application regarding the proposed industrial uses. Even so, it noted that "light-industrial zones already exist in the area" and that Petitioners had not offered "evidence to show how the light-industrial areas already in place have had a negative impact on their businesses."

As an alternative basis for its conclusion that Petitioners lacked standing, the district court concluded that the alleged injuries were not redressable. Specifically, the court reasoned that, even if the case were remanded to the Board "to find a more specific use for the conditional rezone, there is no substantial likelihood that a specific use that satisfies Petitioners will be the exclusive requirement of the conditional rezone . . . ." The court further observed that "Petitioners seem to

take issue with any conditional rezoning of agricultural land that occurs at all." Finally, the court concluded that the gravamen of Petitioners' complaint—the loss of agricultural land in Canyon County—amounted to "a generalized injury suffered by citizens of Canyon County as a whole."

Because the district court ruled that Petitioners lacked standing under this Court's traditional standing framework, it declined to consider whether they qualified as "affected persons" under LLUPA or to consider the merits of Petitioners' challenge to the Board's approval of the Gross application under the Idaho Administrative Procedure Act. Petitioners timely appealed.

## II. STANDARD OF REVIEW

"[A] person wishing to invoke a court's jurisdiction must have standing." *Young v. City of Ketchum*, 137 Idaho 102, 104, 44 P.3d 1157, 1159 (2002). The inquiry to determine whether a petitioner has standing to challenge a land use decision is one over which we exercise free review. *City of Ririe v. Gilgen*, 170 Idaho 619, 625, 515 P.3d 255, 261 (2022). However, we review the district court's factual findings relevant to standing on disputed factual issues for clear error. I.R.C.P. 52(a)(7); *accord Am. Soc'y for Prevention of Cruelty to Animals v. Feld Ent., Inc.*, 659 F.3d 13, 19 (D.C. Cir. 2011) (holding that district court's standing determinations are reviewed de novo, while factual findings underlying standing are reviewed for clear error in Endangered Species Act citizen-suit); *Preminger v. Peake*, 552 F.3d 757, 762 n.3 (9th Cir. 2008) (applying de novo review to standing determination and clear-error review to underlying facts in challenge to agency's land-into-trust determination under Graton Rancheria Restoration Act); *Rent Stabilization Ass'n of City of New York v. Dinkins*, 5 F.3d 591, 594 (2d Cir. 1993) (applying same bifurcated standard of review to standing in constitutional challenge to rent-control law); 13B Wright & Miller's Federal Practice & Procedure § 3531.15 (3d ed. 2025).

## III. ANALYSIS

### A. The district court erred in declining to consider Petitioners' standing to challenge the Board's approval of the Gross application under LLUPA's "affected person" standard.

The district court's ruling that Petitioners lack standing to pursue a petition for judicial review rested on three grounds. First, the district court concluded that the Petitioners failed to allege a concrete injury in fact. To the contrary, it deemed their alleged injuries "speculative at best." The court explained that Petitioners had not demonstrated the loss of any ongoing business relationships or revenues directly tied to the Gross property. Nor, in the court's view, had they alleged with particularity that light industrial zoning generally poses a concrete risk to their

7

businesses, or that rezoning the Gross property would entail comparable risks. Second, the district court determined that any discernible injuries amounted to generalized grievances—that is, Petitioners' broad objection to the conversion of private land in Canyon County from agricultural to industrial uses. Third, and finally, the district court concluded that the alleged injuries were not redressable by judicial decision because there was nothing more for the Board to review on remand.

The district court's analysis reflected a well-reasoned application of the traditional three-part standing inquiry adopted from federal law and generally employed by this Court. However, as we explain, the proper framework for assessing Petitioners' standing is supplied by Idaho Code section 67-6521: LLUPA's "affected person" standard. By enacting LLUPA, the legislature exercised its constitutional authority to define the appellate jurisdiction of Idaho's district courts. In this instance, our traditional standing doctrine must give way to the legislature's determination. To explain why, we begin with a brief overview of Idaho's standing doctrine and then turn to the constitutional authority undergirding section 67-6521.

Idaho's standing doctrine is rooted in principles of federal constitutional law. Generally, the standing doctrine asks, "whether a particular interest or injury is adequate to invoke the protection of judicial decision." *State v. Phillip Morris, Inc.*, 158 Idaho 874, 881, 354 P.3d 187, 194 (2015) (internal quotation marks and citation omitted). This Court has long looked to federal standing jurisprudence for guidance, most notably the traditional three-part inquiry from *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). In *Lujan*, the United States Supreme Court held that a plaintiff satisfies Article III standing requirements by showing: (1) an "injury in fact"; (2) that is "fairly traceable to the challenged action of the defendant"; and (3) "redressed by a favorable decision." 504 U.S. at 560–61 (citation modified); *see also* 33 Wright & Miller's Federal Practice & Procedure § 8333 (2d ed. 2025) (describing *Lujan*'s three-part inquiry as "[t]he black letter law of constitutional standing"); *accord, e.g.*, *Philip Morris, Inc.*, 158 Idaho at 881, 354 P.3d at 194 (applying the *Lujan* inquiry); *Citizens Against Linscott/Interstate Asphalt Plant v. Bonner Cnty. Bd. of Comm'rs*, 168 Idaho 705, 713, 486 P.3d 515, 523 (2021) (same).

*Lujan*'s three-part inquiry embodies the "irreducible constitutional minimum" of Article III, which "limits the jurisdiction of federal courts to 'Cases' and 'Controversies[.]'" 504 U.S. at 559–60. By contrast, the Idaho Constitution imposes no comparable case-or-controversy requirement. Thus, when this Court applies the traditional three-part standing test, it does so as a

"self-imposed constraint," not as a constitutional mandate. *See Reclaim Idaho v. Denney*, 169 Idaho 406, 418, 497 P.3d 160, 172–73 (2021).

Conversely, LLUPA section 67-6521 reflects the Idaho Legislature's exercise of constitutional authority. The Idaho Constitution empowers the legislature to define the appellate jurisdiction of Idaho's district courts. Idaho Const. art. V, § 20. When the legislature exercises that power, it may displace this Court's "self-imposed" standing rules by defining the kind of injury that suffices to grant a petitioner judicial review of a land-use decision. *See Bennett v. Spear*, 520 U.S. 154, 162 (1997). LLUPA provides that only an "affected person" may seek judicial review of a local government's final land-use decision. I.C. § 67-6521(1)(d). And an "affected person" is "one having a bona fide interest in real property which may be adversely affected by" the challenged decision. I.C. § 67-6521(1)(a). This Court's traditional test for evaluating a petitioner's standing must yield to the legislature's choice in this regard.

Accordingly, we hold that section 67-6521 provides the governing standard for analyzing a petitioner's standing to seek judicial review under LLUPA. At the same time, it bears emphasizing that this Court vigilantly guards its prerogative to apply doctrines of judicial prudence—namely, the body of justiciability doctrines we have developed over decades—to ensure that Idaho's courts play "the proper—and properly limited—role of the courts in a democratic society" in other contexts. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Our holding that section 67-6521 supplies the proper standing inquiry for LLUPA petitioners is a narrow one. It reflects section 67-6521's grounding in Article V, section 20 of the Idaho Constitution, which empowers the legislature to define the appellate jurisdiction of the district courts. We also acknowledge that this Court's prior cases have not always been clear about the nature and scope of Idaho's standing doctrine in this realm.

Some of our cases imply the holding we reach in the present case. In *Citizens Against Linscott*, we held that the standing of an association to seek judicial review of a local government's land-use decision turns on whether one of its members qualifies as an "affected person" under Idaho Code section 67-6521(1)(a). 168 Idaho at 713, 486 P.3d at 523 (2021). While *Citizens Against Linscott* makes a passing reference to the three-part *Lujan* inquiry, its analysis of standing engages only with LLUPA's "affected person" standard. *Id.* at 713–14, 486 P.3d at 523–24. Similarly, in *Evans v. Teton County*, we held that "LLUPA confers standing to seek judicial review of a local land use decision to an 'affected person' aggrieved by the decision." 139 Idaho 71, 75,

9

73 P.3d 84, 88 (2003). But, in the very next sentence, the Court also observed that "the legislature cannot, by statute, relieve a party from meeting the fundamental constitutional requirements for standing." *Id.* (citing *Noh v. Cenarrusa*, 137 Idaho 798, 53 P.3d 1217 (2002)).

Importantly, *Evans* never actually applied the three-part *Lujan* inquiry; it only considered whether the petitioners satisfied the "affected person" standard. *See id.*; *see also Cowan v. Bd. of Comm'rs of Fremont Cnty.*, 143 Idaho 501, 509, 148 P.3d 1247, 1255 (2006) ("[I]n land use decisions, a party's standing depends on whether his or her property will be adversely affected by the land use decision."); *Hawkins v. Bonneville Cnty. Bd. of Comm'rs*, 151 Idaho 228, 231, 254 P.3d 1224, 1227 (2011) ("To gain standing, LLUPA allows a person aggrieved by a final decision granting or denying a permit authorizing development to petition for judicial review pursuant to the [Idaho Administrative Procedure Act] after exhausting all available remedies."). Collectively, *Evans* and *Citizens Against Linscott* confirm that this Court's standing doctrine is not grounded in the Idaho Constitution, leaving it susceptible to legislative displacement as embodied in section 67-6521.

At other times, this Court has framed our standing doctrine as *Lujan*'s "irreducible constitutional minimum" that cannot be overcome by section 67-6521. *Evans*, 139 Idaho at 75, 73 P.3d at 88 ("This Court notes that while it recognizes the underlying policy of [Idaho Code section] 67-6521[(1)](d) conferring standing to affected persons, the legislature cannot, by statute, relieve a party from meeting the fundamental constitutional requirements for standing."); *see also Noh*, 137 Idaho at 801, 53 P.3d at 1220 ("While [Idaho Code section] 34-1809 may be a vehicle to determine proper parties to a suit, it cannot create a justiciable controversy."). Consistent with that view, we have at times departed from the example of *Evans* and *Citizens Against Linscott* and instead applied the traditional tripartite standing inquiry derived from *Lujan* in LLUPA cases. *E.g.*, *Coal. for Agriculture's Future v. Canyon County*, 160 Idaho 142, 146, 369 P.3d 920, 924 (2016). That is precisely what the district court did in the present case.

But this approach would seem to suggest that Idaho's standing doctrine is something other than what this Court has repeatedly said it is: a "self-imposed constraint" unmoored from the text of the Idaho Constitution. *Tidwell v. Blaine County*, 172 Idaho 851, 860, 537 P.3d 1212, 1221 (2023); *Reclaim Idaho*, 169 Idaho at 418, 497 P.3d at 172–73. Put simply, while our decisions describe Idaho's standing doctrine as judicially created, we have often treated that doctrine as if it embodied *Lujan*'s "irreducible constitutional minimum." 504 U.S. at 560. To complicate the

10

matter further, our LLUPA cases sometimes treat the "affected person" standard as a substitute for *Lujan*'s tripartite inquiry—an inquiry we have steadfastly applied in other contexts—while at other times applying both tests as though the latter were constitutionally required. This inconsistency has produced a doctrinal muddle. Today, we reaffirm that our standing doctrine is a "self-imposed constraint." *Reclaim Idaho*, 169 Idaho at 418, 497 P.3d at 172–73; *Coeur d'Alene Tribe v. Denney*, 161 Idaho 508, 513, 387 P.3d 761, 766 (2015); *Emps. Res. Mgmt. Co. v. Ronk*, 162 Idaho 774, 777, 405 P.3d 33, 36 (2017); *Regan v. Denney*, 165 Idaho 15, 21, 437 P.3d 15, 21 (2019); *Nate v. Denney*, 166 Idaho 801, 803, 464 P.3d 287, 289 (2017); *Day ex rel. Tr. B of the Donald M. Day & Marjorie D. Day Fam. Tr. v. Transp. Dep't*, 166 Idaho 293, 298 n.2, 458 P.3d 162, 167 n.2 (2020); *Westover v. Idaho Counties Risk Mgmt. Program*, 164 Idaho 385, 389, 430 P.3d 1284, 1288 (2018); *Planned Parenthood Great Nw. v. State*, 171 Idaho 374, 401, 522 P.3d 1132, 1159 (2023); *Von Wandruszka v. City of Moscow*, 174 Idaho 342, 349, 554 P.3d 603, 610 (2024); *BABE VOTE v. McGrane*, 173 Idaho 682, 691, 546 P.3d 694, 703 (2024).

It is understandable that the parties, and even the district court, have characterized Idaho's standing doctrine as constitutional, given that this Court has borrowed its standing inquiry from federal law. Even so, when a petitioner seeks judicial review of a local land-use decision under LLUPA, the standing inquiry is governed exclusively by section 67-6521's "affected person" standard. To the extent that one sentence in *Evans* might suggest otherwise, it is overruled. 139 Idaho at 75, 73 P.3d at 88.

The district court declined to consider whether the Petitioners are "affected persons" under section 67-6521. Because that inquiry is a fact-intensive one, this Court is not the proper forum in which to evaluate Petitioners' standing in the first instance. *See Shoup v. Union Sec. Life Ins. Co.*, 142 Idaho 152, 158, 124 P.3d 1028, 1034 (2005). Accordingly, we remand to the district court to consider Petitioners' allegations under the standard announced by section 67-6521.

We also take this opportunity to clarify the standard of review applicable to a district court's ruling on a petitioner's standing to seek judicial review of a local land-use decision under LLUPA. Determining whether the challenged decision may adversely affect a petitioner's "bona fide interest in real property," I.C. § 67-6521(1)(a), may require the district court to make findings of fact to decide whether that party has standing under that standard, *see Rent Stabilization Ass'n of City of New York v. Dinkins*, 5 F.3d 591, 594 (2d Cir. 1993). Accordingly, if the district court were to decide to dismiss the petition and the dismissal rests on the insufficiency of the petition

11

itself or on undisputed facts evident in the administrative record, we review those determinations freely. *See id.* (citations omitted). But if the district court resolved disputed facts in deciding to dismiss a petition, we would accept its findings unless they are clearly erroneous. *See id.* (citations omitted).

### B. Neither party is entitled to attorney fees.

Both Petitioners and the Board request attorney fees under Idaho Code section 12-117. Where, as here, a county and a "person" are adverse parties to litigation, the prevailing party is entitled to "reasonable attorney's fees, witness fees and other reasonable expenses, if [this Court] finds that the nonprevailing party acted without a reasonable basis in fact or law." I.C. § 12-117(1). A "partially prevailing party" is entitled to the same recovery based on the same finding. I.C. § 12-117(2). Under these provisions, an award of attorney fees is appropriate only "when the court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably and without foundation." *City of Boise v. Ada County*, 147 Idaho 794, 812, 215 P.3d 514, 532 (2009) (citation modified). "Such circumstances exist when an appellant has . . . failed to show that the trial court incorrectly applied well-established law." *Id.*

As discussed, this Court has often employed different standards to assess whether a person may challenge a land-use decision under LLUPA. It follows that, while Petitioners are the prevailing party, we cannot classify the Board's defense in this appeal as frivolous, unreasonable, or without foundation. Accordingly, we decline to award attorney fees to Petitioners.

## IV. CONCLUSION

Based on the foregoing, we reverse the district court's denial of the petition for review and remand for the district court to consider whether Petitioners have standing under Idaho Code section 67-6521. We decline to award attorney fees. Petitioners are entitled to costs pursuant to Idaho Appellate Rule 40(a).

Chief Justice BEVAN, and Justices MOELLER, ZAHN and MEYER CONCUR.